KATHERINE MASON, Respondent, v. FRED UNDERWOOD, J. C. HARPER and JAMES MORAN, Appellants.

(183 N. W. 525.)

**False imprisonment — evidence insufficient to sustain recovery against a joint tort-feasor.**

1. In an action for false imprisonment brought against three defendants as joint tort-feasors, the evidence is examined, and it is *held* insufficient to support a recovery against one of the defendants.

**False imprisonment — verdict for $4,000 set aside as excessive.**

2. Where a verdict for $4,000 was rendered in favor of the plaintiff who was illegally confined in jail for the period of approximately three hours, it is deemed to embrace punitory damages and to include a sum as punishment to the defendant who is not shown to have been responsible for the wrongful acts of the other two defendants, and the verdict cannot stand as against the remaining tort-feasors.

**False imprisonment — evidence of ownership of property held admissible on question of culpability.**

3. In an action for false imprisonment where it appears that the arrest was occasioned partly by acts of the plaintiff in refusing to permit the defendants to remove personal property belonging to one of them, evidence that one of the defendants was owner of the property is admissible for its bearing upon the degree of culpability of the defendant's conduct, though not as a justification of it.

Opinion filed May 31, 1921.

Appeal from the District Court of Ransom County, *Graham, J.*

Reversed and remanded for a new trial.

*Kvello & Adams* and *Ray W. Craig,* for appellants.

"Where exemplary or punitive damages are sought in an action for false imprisonment, proof of good motives may go in mitigation. * * * Where more than actual damages are claimed, defendant may show that he acted prudently, wisely or in good faith. III Elliott, Evidence, § 2109; note 54 A. D. 270; Livingston v. Burroughs, 33 Mich. 511.

The damages awarded against all three defendants were excessive, and appear to have been given under passion or prejudice. Wagoner v. Bodal, 37 N. D. 594; Reid v. Ehr, 36 N. D. 552; Waterman v. Soo Ry. 26 N. D. 540; Carpenter v. Dickey, 26 N. D. 176.

*Curtis & Remington, C. G. Bangert,* and *E. T. Burke,* for respondents.

BIRDZELL, J. This is an appeal by the defendants Underwood and Harper from an order denying a motion for a new trial made on behalf of all the defendants Underwood, Harper, and Moran. The action is one to recover damages for false imprisonment. The plaintiff recovered a judgment of $4,000 and costs. The facts are as follows:

The plaintiff, for some time prior to June 27, 1919, had been the owner of a certain dwelling house in the city of Enderlin. The house was rented to the defendant Harper, who appears to have been a tenant from month to month. In the spring of 1919, the plaintiff and her husband, C. B. Mason, were desirous of obtaining possession of the property for the purpose of making their home there. A notice to vacate was served upon Harper, but he refused to give up possession, whereupon an action in forcible entry and detainer was started in justice court before C. H. Potter, justice of the peace. This case was tried before the justice and a jury on May 28, 1919. The jury rendered a verdict for the defendant Harper, but it seems that upon the announcement of the verdict one of the jurymen stated in substance that his agreement thereto was conditional, whereupon the justice ordered a new trial. The action remained pending, but was not again tried. On June 16th a written stipulation

was entered into wherein the defendant Harper agreed that he would vacate and surrender possession to the plaintiffs on or before June 21st, in which event the justice was authorized to enter a dismissal of the action without costs to either party. And, in the event of the failure of the defendant to surrender possession, as agreed, it was stipulated that the usual judgment in forcible entry and detainer might be entered against the defendant on Monday, June 23d, at 9 a. m., to which time the action was continued for the purpose stated in the stipulation. Harper vacated the premises on the 21st and on Monday, plaintiff not appearing, Harper's attorney secured the entry of the judgment of dismissal without costs in accordance with the stipulation. In the proceedings in justice court Harper was represented by the defendant Underwood, who was the police magistrate of the city of Enderlin, and who at various times acted as attorney for individuals in justice court. Harper did not surrender the keys. He had deposited some money in the bank to the credit of the plaintiff which he claimed paid the rent until July 13th. This money was received by the plaintiff or her husband as her agent. The Masons took possession of the property, gaining entrance to the house through a window, and they promptly moved in with their household effects. Harper had left upon the premises a small tent worth about $15 or $16. It stood near the house, had a floor in it, and was connected with the house by electric wires. After the Masons were in possession of the premises, Harper instructed a drayman to move the tent, but the latter was unable to do so, as the Masons would not permit it. Upon being advised of this fact by the drayman, Harper, meeting Underwood on the street, told him that the Masons refused to allow him to take the tent, whereupon Underwood suggested that when they would go again for the tent they should take the chief of police, Moran, the other defendant in this action; that he thought in this event there would be no trouble. Thereafter, on June 27th, the chief of police accompanied the drayman to the Mason home, arriving there about 3 o'clock in the afternoon. Mason, who was working nights as a switchman, was upstairs asleep, but Mrs. Mason, the plaintiff in this action, was there and requested them not to take the tent unless they had papers authorizing them to take it. The defendant Moran exhibited his policeman's star and stated in substance that that was as good as papers and that he would either take the tent or take Mr. Mason. The plaintiff, becoming shocked at his attitude, ran into the house crying. Moran followed her and went upstairs, where

Mason was asleep, Mason was awakened and placed under arrest by Moran. As he was leaving the premises in Moran's custody, he ordered the drayman not to move the tent, whereupon they desisted. Moran took Mason to the office of Underwood, where there was some discussion concerning the tent.

The testimony of Underwood and of the plaintiff Mason is conflicting as to what transpired there. At the time of the trial Moran was out of the state and his testimony is not in the record. Underwood claims that he expressed the opinion that the Masons were not in legal possession of the premises, that Harper had a right to obtain the tent, and that if Mason interfered by way of assaulting any one taking the tent he should be arrested. Mason testified in substance that on entering Underwood's office Moran advised Underwood that he had Mason there to do with as he (Underwood) directed, whereupon Underwood asked Mason if he refused to give up the tent, to which the latter replied that he did, without papers; that Underwood then directed Moran to put Mason in jail; that Moran then stated that Mason's wife, the plaintiff, also refused to give up the tent; and that Underwood directed him to take his wife and put her in jail. The parties left Underwood's office, went across the street, and, taking Moran's automobile, went back to the Mason premises, where Mrs. Mason, still refusing to permit the tent to be taken, was placed under arrest. She protested being taken through the streets in her dirty house apron and with her hair down, and demanded to be allowed to change her attire. She was permitted to go into the house, but Moran followed her, so it seems she was not given an opportunity to change her attire. She was placed in the back seat of the automobile. Moran then drove the car to Underwood's office and, not finding him in, proceeded to Underwood's residence, driving slowly past. Not seeing him there, he drove to the city jail, where the plaintiff and her husband were locked up. The jail was foul and filthy. Moran finally located Underwood and swore to a complaint which stated no offense against the city ordinances nor the laws of the state, and Underwood issued warrants for the arrest of the two persons. He took these warrants to the jail and served them upon the plaintiff and her husband. The plaintiff was confined in the jail for a period of approximately three hours when she was allowed to go upon her own recognizance. Her husband was kept there some two or three hours longer, being admitted to bail in the sum of $75 furnished by his attorney. The purported criminal proceedings were later dropped.

Separate actions were instituted by the plaintiff and her husband for false imprisonment.

A number of errors are assigned upon this appeal, all of which it will not be necessary to consider, as we are of the opinion that the judgment cannot stand in its present form and that a new trial must be awarded.

Counsel for the defendants and appellants tacitly admit that the rights of the plaintiff have been invaded and that she has a cause of action. It is urged, however, that the evidence in the record is not sufficient to prove a conspiracy between Underwood, Harper, and Moran, or to otherwise connect Harper with the false imprisonment. We have examined the evidence with great care to ascertain the exact state of the proof of Harper's connection with the arrest, and we fail to find any evidence to connect him with it. All the evidence shows in this connection is that when he related his difficulty in obtaining possession of the tent, Underwood suggested the advisability of taking or sending Moran along for the purpose of avoiding trouble, as it was thought that the Masons would offer no resistance in the presence of the chief of police. In other words, so far as Harper is concerned, at least, this record shows that the motive in sending Moran to the premises was to obtain the tent without trouble. He did not authorize Underwood to give Moran instructions, he did not know in advance that Moran contemplated arresting either the plaintiff or her husband, nor did he know of the arrest until after the parties were in jail. Neither did he in any way ratify the acts of Underwood and Moran. Thus, we think the evidence insufficient to charge Harper with a liability. At best, it only shows that the tort-feasors purported to act in his interest and that he knew in advance of their action that the plaintiff and her husband objected to his taking possession of the tent. From these facts alone we cannot infer that he authorized what was subsequently done. We cannot assume that he would countenance a false imprisonment for the sake of recovering a tent worth not to exceed $16.

Under the instructions of the court, the jury, in assessing damages, was authorized to assess against all defendants against whom they rendered a verdict an amount sufficient to serve as punitory damages or a sum that would be a warning to the defendants and all other persons not to commit similar wrongs. Clearly the jury, in arriving at an appropriate amount to assess as punitory damages, may justly consider

the degree of participation of each of the defendants and the degree of culpability of his conduct. Where the verdict is in a lump sum, against all defendants, it is fair to assume that the jury has measured the damages with the view of appropriate punishment for all whom they deemed responsible for the wrongs committed. If, under the evidence, one be not responsible, clearly the verdict is tainted. Landseidel v. Culeman, 181 N. W. 593. We cannot now determine what evidence may be introduced upon another trial to connect Harper with the alleged wrongful conduct of Underwood and Moran, so on account of the insufficiency of the evidence to connect him with the tort the judgment must be reversed as to both appellants and a new trial awarded.

Error is also assigned upon the exclusion of evidence offered on behalf of the defendants to establish that Harper was the owner of the tent and that it was believed that he was such owner. The evidence was apparently excluded on the ground that the ownership of the tent did not justify the acts of the defendants in arresting the plaintiff. This is, of course, true; but nevertheless we think the ownership of the tent may well be considered by the jury in this case in measuring the degree of culpability attaching to the acts of the defendants. Acts done in pursuance of an attempt by one to obtain possession of property for the lawful owner having the right of possession, even though the acts in themselves are unlawful, are not to be considered as on a par with the same acts done wantonly and with no pretense of pursuing a legal object. It may be observed, too, that the plaintiff is not entirely without fault in not allowing the owner of the tent to remove it. On the facts appearing in this record, we are of the opinion that it would have been proper for the court to have instructed the jury that the tent was the property of Harper; that the defendants were none the less not justified in their acts, but that they should consider the fact of ownership in relation to the other circumstances in determining the degree of culpability and fixing the punitory damages.

It follows from what has been said that the order appealed from must be reversed, and a new trial granted; costs to abide the event. It is so ordered.

CHRISTIANSON and BRONSON, JJ., concur.

ROBINSON, C. J. (concurring specially). On a pleasant summer day

in June, 1919, in the city of Enderlin, the plaintiff and her husband were taken in a car and put in the Enderlin jail by the chief of police. Then he made complaint on which Mr. Underwood, the police magistrate, issued a warrant against them, and discharged them because the complaint did not state a cause of action. The result was two actions against the defendants for false imprisonment. Her verdict was $4,000; his, $1,200.

Some two years before the arrest the Masons had traded some property for the house and lot on which Harper and his family had resided for over three years and on which he had a tent worth about $15. The Masons served on Harper notice to quit the premises and had a suit to obtain possession. That was on June 21, 1919. Harper claimed the right to hold possession until July 13th and that in payment of rent until then he had deposited in the Bank of Enderlin $22.50. The suit went against Harper. Then the Masons took the $22.50 which Harper had deposited to their credit and refused to refund it. Hence Harper refused to deliver possession of the house which he left and retained the keys. In removing he neglected to take the tent. The Masons stealthily took possession by opening a window and then they claimed the tent as a part of the realty because it was fastened to the earth by stakes to prevent it blowing away. Harper hired a dray to go and take the tent, and at his request, Moran, the chief of police, went with the dray. The Masons persisted in holding the tent. He said to her: "Old girl, hold the tent." The chief of police took them into his car and put them in jail and made a complaint on which the police magistrate issued a warrant for the arrest of the Masons. The complaint was under a supposed city ordinance. The charge was that on June 27, 1919, in the city of Enderlin, the defendants did commit the crime of being disorderly and of disorderly conduct within the city of Enderlin, and that the defendants did wrongfully and with malice aforethought threaten and interfere with the person of complainant, the chief of police, contrary to the provisions of the ordinance of the city of Enderlin. Pending the hearing of a demurrer to the complaint, she was released without any bail. He was released on a deposit of a check for $75. After argument it was adjudged that the demurrer be sustained and the defendants discharged.

Mr. Underwood, the magistrate, is the only party in any way responsible. The others have no property; they are execution proof. The verdict is almost entirely for punitory damages. There can be no just claim that

either the plaintiff or her husband were in any way materially injured. The $15 tent was the cause of all the trouble. As Harper had been in possession of the house for over three years, and long before the purchase of the same by the Masons, he was doubtless the owner of the tent and he had a perfect right to remove it. He offered evidence to show his ownership and to show that he had retained the keys and had not given up possession of the tenement. He offered evidence to show that pending his suit for possession he had deposited in the Bank of Enderlin $22.50 as rent of the house to July 13, 1919, and that when the Masons prevailed in the suit they took from the bank the $22.50 and refused to refund the same or any part of it. The court refused to permit the evidence. That was error. In taking surreptitious possession of the tenement and in refusing to give up the tent and claiming it as a part of the realty, and in taking the money deposited for rent to July 13, 1919, the Masons were clearly wrongdoers and aggressors and there is no use to say that Harper had a perfect remedy by an action of replevin, as such an action would have cost the full value of the tent. The question being one of exemplary damages, it was clearly proper for Harper to show that he owned the tent and had a right to remove it. If the Masons by their conduct directly provoked and caused the wrong of which they complain, there is no reason why they should recover punitory damages. Indeed, their right to actual damages against either of the defendants is a question of grave doubt.

Now let us consider the liability of each defendant. Moran was chief of police, and in making the arrest without a warrant and then making the complaint and serving the warrant he did just what policemen are doing every day. Whether right or wrong, he acted officially, and the presumption is that he acted in good faith.

Harper is in no way liable. He was no party to the arrest. There is no evidence of a conspiracy, as charged in the complaint.

Mr. Underwood, the police magistrate, issued the warrant against the defendants on a complaint which he himself held bad on demurrer. His action was purely judicial. That is shown by the complaint, the docket, and the testimony of the magistrate.

The case is quite similar to the recent case decided by this court. Landseidel v. Culeman, 181 N. W. 593. In that case the defendants appealed from a joint verdict and judgment against them for $4,000. Culeman claimed that he merely acted as a justice of the peace. By a

special verdict the jury found that for the purpose of extorting money from the plaintiff the defendants jointly caused him to be arrested and confined in the city jail at Hebron, and that none of the defendants believed him to be guilty of any offense. However, this court held thus:

"A justice of the peace, acting judicially, and within his jurisdiction, is not * * * liable for damages resulting from the arrest and confinement of an individual in jail, though it might appear that he acted maliciously and without the belief that the person had committed a criminal offense."

Also, that—

"Where two or more defendants are sued jointly for damages arising out of a malicious trespass, * * * and * * * it appears that one of the defendants is not liable, the award of punitory damages cannot stand as to the codefendants"

This is not a case for punitory damages.

Judgment reversed, and new trial granted.

GRACE, J. (specially concurring). I concur in the opinion of Mr. Justice ROBINSON, on the ground that the court erred in excluding evidence of ownership of the tent.