C. B. MASON, Respondent, v. FRED J. UNDERWOOD, J. C. HARPER, and JAMES MORAN, Appellants.

(183 N. W. 529.)

**False imprisonment — evidence of ownership of property held admissible on question of culpability.**

In an action for false imprisonment, where it appears that the arrest was occasioned partly by acts of the plaintiff in refusing to permit the defendants to remove personal property belonging to one of them, evidence that one of the defendants was the owner of the property is admissible for its bearing upon the degree of culpability of the defendant's conduct, though not as a justification of it, and its exclusion by the trial court was reversible error.

Opinion filed May 31, 1921.

Appeal from the District Court of Ransom County, *Graham, J.*

Reversed and remanded for a new trial.

*Kvello* & *Adams,* and *Ray W. Craig,* for appellants.

*Curtis* & *Remington, C. C. Bengert,* and *E. T. Burke,* for respondents.

BIRDZELL, J.   This is an appeal by the defendant Underwood from an order of the district court of Ransom county, denying a motion for a new trial.   The action is one to recover damages for false imprisonment. Upon the trial the jury found the issues for the plaintiff as against the defendants Underwood and Moran, but in favor of the defendant Harper. Damages were assessed in the sum of $1,200.   It is unnecessary to state the facts in this case.   They are the same, substantially, as stated in the case of Katherine Mason v. Underwood et al., 183 N. W. 525, decided concurrently herewith.

The only assignment of error argued by the appellant in the brief filed in this case is that the verdict was so excessive as to appear to have been rendered under the influence of passion or prejudice. It appears, however, that among the specifications of error printed in the brief there is one relating to the ruling of the trial court excluding testimony with reference to the ownership of the tent.   And in stating the issues involved in the appeal the question is stated: "Should the court have permitted testimony in mitigation of punitory damages?"   The assignment regarding the ownership of the tent is fully argued in the brief in the Katherine Mason Case, orally argued, submitted, and decided concurrently herewith.   It is also argued in respondent's brief herein.   This court has had some doubt as to whether the appellant should not be considered to have waived all of the assignments except that relating to the excessiveness of the verdict, since this is the only assignment argued in the brief; but in view of the manner in which the cases were submitted in this court, the majority of the court does not regard the specification as to the tent waived.   Our views of this error are set forth in the other case and need not be repeated here.   In view of the necessity of a retrial of the Katherine Mason Case and of the probable prejudicial effect of excluding from the jury the circumstance of the ownership of the tent for its bearing upon the

question of punitory damages, it is deemed proper to order a retrial of this action with costs to abide the event. In doing so, however, we think it appropriate to express our opinion concerning the excessiveness of the verdict, as the question is so fully argued and the expression now may serve to obviate another appeal.

The evidence goes to establish that the defendant Underwood is a man of considerable means; that he had long occupied the office of police magistrate and had occasionally appeared in justice court in the capacity of attorney; so that he had acquired a standing as one connected with the administration of the law. If the responsibilities of his honorable position are not properly met, his conduct is more culpable than that of the ordinary layman. It appears here that he was the principal actor and is perhaps more to blame than anybody else for inflicting upon the plaintiff the indignities incident to the arrest and imprisonment. The plaintiff had resided in Enderlin but a short time before the occurence of the events leading to this suit. Probably the evidence does not show him to have been a man of delicate sensibilities in regard to his standing in the community, but it does not appear that he is a person who would not have been grievously affected by the indignities suffered. It was shown that he had at various times been engaged in the following occupations: Bartender, oil stock salesman, pool hall keeper, brakeman, and, lastly, switchman; and that he had lived in half a dozen or more places since his marriage. We cannot assume from these facts, however, that he would not naturally aspire to a respectable place in the community, and that he would not be seriously damaged by a conspicuous introduction to the community as one worthy of occupying the city bastile. While he might not have been seriously damaged in the loss of a reputation because one had not yet been acquired in his new abode, he would certainly be seriously handicapped in his efforts to establish himself upon a plane of respectability. The jury must necessarily be accorded considerable latitude in measuring damages in cases of this character, and particularly in fixing upon an amount to be assessed as punishment for the wrong done. In view of all the circumstances disclosed in this record, we cannot say that the verdict is so large as to shock the conscience, nor can we say that the trial court erred in exercising its discretion in favor of the plaintiff on the motion for a new trial.

The order appealed from is reversed, and a new trial ordered; costs to abide the event.

CHRISTIANSON and BRONSON, JJ., concur.

ROBINSON, C. J. (concurring specially). On a pleasant summer day in June, 1919, at the city of Enderlin, the plaintiff and his wife were gently arrested by the chief of police because they insisted on keeping a $15 tent which did not belong to them. The chief took them gently into his automobile, took them to the chief magistrate, and then, for safe-keeping, put them in the city jail while he made a complaint and obtained a warrant against them for bad conduct and for obstructing him in the removal of the tent. The chief served the warrant, and in a few hours both parties were brought before the magistrate and were released. She, on her promise to return; he, on a deposit of a .check for $75. On a demurrer the complaint was held bad and they were both discharged. Then, for the arrest and imprisonment, she brought an action to recover $10,000; he, an action for $5,000. The jury awarded her $4,000 against three defendants and awarded him $1,200 against the magistrate and the chief of police. Some people are so liberal with the money of others. In each case the verdict was for about 100 times the actual damages. However, it is said the verdict is not so excessive as to shock the conscience; but, as I think, that can only be true where there is little or no conscience to be shocked. And what shall we say of the excessive damages claimed in the verified complaint, which were known to be untrue, and of the lawyer who subscribed to or verified such complaints? The duty of the lawyer and the courts is to prevent one party from robbing another through the forms and technicalities and the chicanery of the law, and to see that every suit is commenced and conducted in an honorable and professional manner.

By statute every person who suffers detriment from the unlawful act or omission of another may recover from the person at fault a compensation in money, which is called damages. § 7139. In an action for the breach of an obligation not arising from contract, when a defendant has been guilty of oppression, fraud, or malice, the jury may give damages for the sake of example by way of punishing him. § 7145. That is called exemplary or punitory damages. Damages must in all cases be reasonable and not unconscionable or grossly oppressive. § 7183.

Regardless of fine-spun theories, defendant Harper had a perfect right to take the tent without paying $15 as the expense of a lawsuit. He had a right to take it by his drayman under the protection of the chief of

police. The chief went with the drays and he acted with great kindness and without anger. He told the plaintiffs that the tent belonged to Harper and not to them, and that he would take it or arrest them if they persisted in obstructing him. Yet, they persisted in doing wrong. They deliberately chose to be arrested and to go to jail sooner than to let Harper have his tent. For over three years Harper had been in possession of the tenement house, which was traded to the Masons for a pool room outfit. Harper had paid his rent monthly and was a tenant from year to year. Yet the Masons wrongfully treated Harper as a tenant from month to month. They served on him a notice to quit, and by error of law obtained a judgment for possession. Harper had deposited in the Enderlin Bank $22.50 to pay rent to the night of July 13, 1919, and on entry of the judgment Mason took the $22.50 and refused to refund any part of it. Hence Harper retained the key of the house and did not give up possession, and the Masons broke in through a window and then claimed possession of the house and the tent. The record is long and it abounds with numerous errors:

(1) The court erred by refusing to permit Harper to prove the ownership of the tent. (2) The court erred by refusing to permit proof that Harper had paid rent to the night of July 13th, that Harper held the keys of the house and did not give possession to the Masons. With such proof and such facts Harper, and those who acted for him, had a perfect right to take possession of the tent. But if the tent did not belong to Harper, then, of course, he had no right to take it, and then he was liable for both actual and punitory damages. So it was clear and manifest error to exclude evidence concerning the ownership of the tent, the payment of rent to July 13th, and the way in which the Masons broke into the house.

Now it is truly said of Mr. Mason that at the time of the trouble he had not long resided in Enderlin. "He had at various times been engaged in the occupations of bartender, oil stock salesman, pool hall keeper, brakeman, and lastly, switchman, and that he had lived in half a dozen or more places since his marriage." Then it is assumed that by the indignity suffered he must have been grievously affected and thwarted in aspirations to establish himself as a respectable citizen of the community. However, there is good reason for thinking that he deliberately chose the paths of the wrongdoer and that he acted as the bully of the community, threatened the chief magistrate, and undertook by force and intimidation to withhold a tent which did not belong to him, and broke into a tene-

ment which had been occupied by Harper. Wholly different is the testimony regarding Mr. Underwood. For 25 successive years he has been elected and re-elected as the chief magistrate of Enderlin. He has not been roving about from place to place, from post to pillar, and leaving his character behind him. For aught that appears to the contrary, the word and the conscience of Magistrate Underwood is just as good as any judge of this state, and there is no reason that he should be mulcted in damages to the amount of one cent. There is no testimony that he had anything to do with the arrest. True, the Masons testify that when brought before the magistrate he ordered them taken to jail while he made out the complaint and the warrant for their arrest. This the magistrate does emphatically deny, and it is of no special consequence. His word is fully as good as that of the roving Masons. No honesty is shown by their trying to keep the tent, their keeping the excess rent paid to July 13th, or their breaking into the house, and, as a rule, both truth and honesty go together. A person who is not honest, neither is he truthful. In dealing with Harper, if the Masons had shown a spirit of Christian charity and fairness, they might still be residing in Enderlin. The judgment should be reversed, and the action dismissed.

GRACE, J. (specially concurring). I concur in the opinion of Mr. Justice ROBINSON, on the ground that the court erred in excluding evidence of ownership of the tent.