STATE OF NORTH DAKOTA, Respondent, v. HIRAM J. STEPP, Appellant.

(185 N. W. 812.)

**Criminal law — appointment of special counsel to assist prosecution held not error.**

1. For reasons stated in the opinion the trial court did not err in making an order appointing special counsel to assist the state's attorney in the prosecution of this case.

**Criminal law — plea of not guilty held not withdrawn by subseuent motion to quash information.**

2. Where a defendant enters a plea of not guilty to a criminal information the issue framed by such plea remains until disposed of in some proper manner. Such plea is not deemed withdrawn because the defendant subsequently moves to quash the information on the ground that it does not state facts sufficient to constitute a public offense.

**Criminal law — grant of new trial for newly discovered evidence in discretion of trial court.**

3. Whether a new trial shall be granted on the ground of newly discovered evidence is primarily a question for the trial court. The function of the appellate court is merely to review the ruling of the trial court to ascertain whether in ruling as it did the trial court abused the sound, judicial discretion with which it is vested. In the instant case the appellate court, for reasons stated in the opinion, is unable to ascertain, upon the record before it, what the trial court actually found upon the controlling facts, and for that reason the order denying a new trial is set aside and the cause remanded with directions that the trial court hear and determine anew the motion for a new trial.

Opinion filed Dec. 5, 1921.

Appeal from the District Court of Ramsey County, *Buttz*, J.

Defendant appeals from a judgment and from an order denying a new trial.

Order denying new trial reversed, and cause remanded with directions to hear and determine such motion anew.

*G. Grimson,* State's Attorney, *Fred J. Traynor,* special Ass't. State's Attorney, *Wm. Lemke,* Attorney General, for respondent.

*J. F. T. O'Connor* and *C. F. Peterson,* for appellant.

An unofficial member of the bar may not assist in the prosecution for a fee paid by private persons. Beimel v. State, 71 Wis. 444, 37 N. W. 244; Bird v. State, 77 Wis. 276, 45 N. W. 1126.

It is the policy of the criminal law that the prosecuting attorney have active superintendence of the management of criminal trials. He should see that it does not degenerate into a private persecution or prosecution. People v. Blackwell, 27 Cal. 66; Hayner v. People, 72 N. E. 782; Comm. v. Knapp, 20 Amer. Dec. 534; Comm. v. Webster, 52 Amer. Dec. 711.

The court erred in not arraigning the defendant, in not giving defendant an opportunity to plea, or enter a plea. § 10746, 1913 N. D. Comp. Laws; State of Oregon v. Walton, 91 Pac. 490, 13 L. R. A. N. S. 811; see note 13 L. R. A. N. S. at p. 812 and cases cited; see note 13 L. R. A. N. S. at p. 813 and cases cited.

It is the function of this court to review the ruling of the trial court on the motion, and to determine whether, in denying a new trial, the trial court abused its discretion, and thereby effected an injustice. State v. Gray, 31 N. D. 67, at p. 81, 153 N. W. 452; Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419; State v. Gray, 31 N. D. 67, 153 N. W. 452.

If it is clear that the new evidence would not change the result the motion should be denied, but if it is doubtful how it would affect the verdict, the motion should be granted. Lindley v. State, 11 Tex. App. 284; State v. Laper, 128 N. W. 476; Aylmer v. Adams, 153 N. W. 422; State v. Fleming, 17 Idaho 471, 106 Pac. 305.

CHRISTIANSON, J. The defendant was convicted of the crime of rape in the first degree in the district court of Ramsey county, on a change of venue from the district court of Cavalier county, and sentenced to 2½ years' imprisonment in the state's penitentiary. After sentence had been

imposed, defendant moved for a new trial, which was denied, and he has appealed from the judgment and from the order denying a new trial.

The first assignment of error is to the effect that the court erred in appointing and permitting Fred J. Traynor to act as special assistant state's attorney in the prosecution of the case over the objection of the defendant. This question was considered upon a former appeal in this case. See State v. Stepp, 45 N. D. 516; 178 N. W. 951-953. As appears from the opinion in that case, Mr. Traynor was appointed by the district court as assistant state's attorney and assisted in the prosecution upon the first trial of the case. After the case was remanded by this court for a new trial, Mr. Traynor was appointed an assistant attorney general for the purpose of assisting in the prosecution of this case, such appointment being made by the Governor under chap. 20, Laws Special Session 1919. The record also shows that the judge who presided upon the trial of this case heard both the state's attorney and the counsel for the defendant before he made the order appointing Mr. Traynor to assist the state's attorney in the prosecution of this action. We are entirely agreed that in the circumstances the trial court did not err in making such order.

It is next contended that the conviction should be set aside for the reason that the defendant did not enter any plea to the information before the commencement of the trial, and was not afforded an opportunity to do so. In support of this contention the defendant points out that the record on this trial of the action does not show that the defendant either entered a plea or was afforded an opportunity to do so; also, that the record shows that upon this trial defendant's counsel made an oral motion to quash the information on the ground that it did not state facts sufficient to constitute a public offense, or any offense, under the statute. It is contended that when the defendant moved to quash the information, he in effect withdrew any plea formerly entered; and that the consideration and denial of this motion by the trial court, in effect, amounted to a recognition of such withdrawal. In our opinion these contentions are not well founded. The record shows that prior to the commencement of the first trial, namely, on June 17, 1919, the defendant entered a plea of not guilty to the information. By such plea an issue of fact was framed, which was tried at that time. On appeal to this court the conviction was set aside because of certain errors in the conduct of that trial, and the cause was remanded for a new trial in order that the defendant might be afforded a fair trial. The issue raised by the plea of

not guilty was not disposed of. The new trial was ordered that that issue might be determined in the manner provided by our laws. Under our statute the failure of an information to state facts sufficient to constitute a public offense is not a ground for setting aside the information upon motion (§ 10728, C. L. 1913), although it is a ground for demurrer (§ 10737, C. L. 1913). Both a motion to set aside an information and a demurrer must be in writing, and subscribed by the defendant or his attorney (§§ 10729, 10738, C. L. 1913). A motion to set aside an information lies only for the grounds specified in the statute (§ 10728, C. L. 1913), "and said motion must be made before the defendant demurs or pleads, or the objection is waived" (§ 10729, C. L. 1913). The trial court may, in its discretion, permit a plea to be withdrawn and a different plea or a demurrer to be interposed (§ 10749, C. L. 1913).

We are entirely satisfied that the trial court was correct in proceeding on the theory that the plea of not guilty interposed before the commencement of the first trial, and the issue thereby framed, remained until the defendant asked that the plea be withdrawn. And, in view of the statutory provisions above referred to, we do not believe it can be said that the defendant ever withdrew his plea of not guilty and that the case was tried without being at issue. The fact that the trial court ruled upon the motion to set aside the information cannot, we think, be construed as permission by the court that the plea of not guilty be withdrawn; nor can the making of such motion be deemed a withdrawal by the defendant of his plea of not guilty. The motion having been made, it was, of course, incumbent upon the trial judge to make some ruling. This he did. He denied the motion and that ruling was, in our opinion, a correct one.

In no event can it be said that any substantial right of the defendant was affected adversely by not affording him an opportunity to plead anew before the second trial commenced. That trial proceeded and was had upon the theory that the plea of not guilty, which had originally been entered, remained in full force and effect. The defendant, upon the witness stand, positively denied the charge against him, and in his instructions to the jury the trial judge said:

"When arraigned upon that information the defendant pleaded not guilty to that charge, and that puts in issue or denies every material allegation contained in the information and makes it necessary for the state to prove the defendant guilty to your satisfaction, beyond a reason-

able doubt, before you would be justified in returning a verdict of guilty against this defendant."

Under our laws, it is the duty of this court, after hearing an appeal in a criminal action, to "give judgment without regard to technical errors or defects or exceptions, which do not affect the substantial rights of the parties" (§ 11013, C. L. 1913).

The third assignment of error is that the trial court erred in denying defendant's motion for a new trial on the ground of newly discovered evidence. When this case came on for trial the state offered as a witness one Mrs. Manning, who did not testify upon the first trial. Upon this trial of the action, the defendant was represented by counsel who did not appear for him upon the former trial, although he appeared for him on the appeal to this court. Mrs. Manning testified that she came to the home of the complaining witness on one occasion at or about the time that the crime charged against the defendant is alleged to have been committed; that she knocked on the door, but that no one responded; that she thereupon entered the house, and on opening the door into the kitchen saw the plaintiff and the complaining witness in a compromising position on the floor. Mrs. Manning was the only witness claiming to have witnessed the commission of the crime. In support of the motion for a new trial the defendant submitted certain affidavits tending to show that the witness Manning had made certain statements wholly inconsistent with or contradictory to the testimony which she gave upon the trial of the action. In denying the motion for a new trial the trial court filed a memorandum opinion wherein he stated:

"While I am not satisfied with all of the evidence in this case, there is evidence in the case which, if believed, is amply sufficient to sustain the verdict. As I understand it, the credit to be given a witness, and the weight of the evidence, is for the jury, and the court is not justified in setting aside the verdict simply because he could not have arrived at the same conclusion as did the jury."

In the certificate of probable cause made by the trial judge upon this appeal he said:

"There is probable cause for an appeal on the part of the defendant. Mrs. Manning's name did not appear on the information, and the first information that the defendant had was when the case was called for trial that the state would call Mrs. Manning and, the attorneys for the defendant promptly objected to Mrs. Manning testifying, for the reason

that her name was not on the information and on the ground of surprise, and the court reserved its ruling and, when Mrs. Manning was called, permitted her to testify, and if her evidence was believed by the jury this was the strongest testimony the state had, and one of the jury men so expressed himself to me; however, for the reason stated in the order denying a new trial, a new trial was denied."

The question as to the granting of a new trial on the ground of newly discovered evidence and the functions exercised by the trial court and by the Supreme Court on such motion were fully considered by this court in Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419, and State v. Cray, 31 N. D. 67, 153 N. W. 425, and little can be added to the discussion contained in those two decisions. As therein stated, the question whether a new trial shall be granted on the ground of newly discovered evidence is primarily one for the trial court, and the function of the appellate court is merely to review the ruling of the trial court on such motion, and this review is limited to a determination of the question whether in denying a new trial the trial court abused its discretion and thereby effected an injustice. 31 N. D. 81, 153 N. W. 425. The function of courts is to dispense justice, and the discretion vested in the trial court should always be exercised in the interests of justice. The presumption, of course, is that it has been so exercised. 31 N. D. 81, 153 N. W. 425. The rules governing the consideration of motions for a new trial on the ground of newly discovered evidence have been formulated to aid in the administration of justice, and to prevent a miscarriage of justice. Hence, where it is shown to the satisfaction of the trial court that since the trial at which he was convicted, a defendant has discovered certain new and material evidence, which he could not with reasonable diligence have discovered and produced at the trial; and the newly discovered evidence is of such probative force and character that, if considered with all the evidence adduced at the trial, it is likely to raise in the minds of reasonable men a reasonable doubt as to the guilt of the defendant, that is, that such newly discovered evidence is likely to produce a different result upon another trial of the action—then it is the duty of the trial court, however unpleasant that duty may be, to grant a new trial.

"The general rule on the subject, the same being unquestionably correct as an abstract legal proposition, may be briefly stated thus: A new trial, where the motion is based upon newly discovered evidence,

may be properly refused if such evidence, being admitted, would not change the result. The same principle has been sometimes expressed in different language, but the meaning is usually that above conveyed. The foregoing expression is equivalent to saying that the motion should not be granted, unless the court can see from the showing made that a different verdict will probably result from a retrial with the new evidence added. In other words, in order to warrant a denial of the motion the court must be of the opinion that the admission of the new evidence would not cause a different result. * * *

"As in all cases where the matter rests almost absolutely within the discretion of individual men, no specific rule of any value, subordinate to and definitive of the leading rule, and applicable generally, can be laid down. * * * The following is suggested as * * * the * * * rule in criminal cases: It is not required that the new evidence shall be so important or conclusive of the point upon which it is offered as to create, with the evidence introduced at the trial, a preponderance in favor of the defendant's innocence, but only that it create a reasonable doubt of his guilt." Spelling's New Tr. & App. Pr. § 221.

The difficulty which confronts us in this case is one of interpreting the actual findings of the trial judge.

It is true he denied the motion for a new trial, but according to his memorandum opinion he was not satisfied with the evidence on which the verdict was based, and apparently the controlling reason for denying the motion for a new trial was that there was sufficient evidence to sustain the verdict. In the certificate of probable cause certain language is used, which seems to imply that the trial judge believed that the conviction of the defendant was due, largely if not wholly, to the testimony of the witness Mrs. Manning. He was not justified in denying the motion for a new trial here merely because he was of the opinion that there was substantial evidence tending to support the verdict. If he was of the opinion that the proposed evidence was newly discovered, and could not with reasonable diligence have been discovered and produced by the defendant upon the trial of the action; and if he further was of the opinion that the newly discovered evidence probably would, and ought to, bring about a different result upon another trial—in other words, if the trial judge was of the belief that the new evidence was of such character that, considered in connection with the evidence adduced upon the trial, it would be likely to create

in the minds of reasonable men a reasonable doubt as to defendant's guilt—then he should have granted a new trial. Or to state the concrete proposition as it appears in this case, it is our opinion that if the trial court was of the belief that the defendant would not have been convicted except for the testimony given by Mrs. Manning, then he should have granted the motion for a new trial.

The language utilized by the trial judge in the record transmitted to us on this appeal is such that we have some difficulty in understanding exactly what conclusions he did reach so far as the facts are concerned. And it is his judgment, his conclusions as to what the facts are which in the first instance largely, if not wholly, determine whether a new trial should or should not be had. The discretionary power with which trial courts are vested in ruling on motions for a new trial on the ground of newly discovered evidence is primarily applicable to a determination of the facts. The facts being determined, the applicable legal principles readily determine whether a new trial should or should not be had.

In the circumstances it is our opinion that the order denying the motion for a new trial should be set aside, and the cause remanded with directions that the trial court hear such motion anew, and, by application of the principles enunciated in this opinion, determine whether a new trial should or should not be had.

It is so ordered.

BRONSON and BIRDZELL, JJ., concur.

GRACE, C. J. (concurring specially). It is my opinion that the judgment should be reversed and a new trial granted.

ROBINSON, J. (concurring in part). The complaint charges that on February 26, 1918, at Sarles, N. D., defendant committed rape on Florence Day. She was then a full-grown woman nearing sweet 16. He was a bald-headed man in the fifties. He was convicted, and the sentence was 2½ years in the pen. The claim is that at midday he entered the Day kitchen, put his hand on her shoulders, laid her on the floor, and had with her a sexual mating. There is no claim of any fear, intimidation, or resistance.

Defendant moves for a new trial because of errors of law, surprise, and newly discovered evidence. In denying the motion the trial

court failed to consider the newly discovered evidence, a matter of the greatest importance. His memoranda opinion reads thus:

"While I am not satisfied with the evidence in this case, there is evidence which I believe is sufficient to sustain the verdict. As I understand it, the credit to be given a witness, the weight of evidence, is for the jury, and the court is not justified in setting aside a verdict simply because he could not have arrived at the same conclusion as did the jury." C. W. Buttz, Judge.

Now, though the trial judge failed to consider and discuss the newly discovered evidence, that is no good reason for remanding the case that he may reconsider the motion, as it might result in a third appeal to this court and in harassing the life out of defendant. The two appeals, with the lengthy transcripts, must have cost him over $1,000. On the record the court should not hesitate to order a new trial. On appeal to this court the first conviction was set aside by reason of the misconduct and overzeal of private counsel who conducted the prosecution and swelled the record with matters prejudicial to defendant. On the second trial the same counsel was guilty of similar misconduct. Thus, when several witnesses were called and testified to the good character of the defendant for chastity, he asked each witness questions intimating, and virtually asserting, that defendant had been guilty of gross misconduct with this woman and that woman, thus presenting several issues and poisoning the minds of the jurors. Now, if the overzeal of private counsel did not cause the second conviction, it did cause the second appeal, because on the record it is so manifest that defendant did not have a fair trial, counsel should not have opposed the motion for a new trial. And without some showing of reasonable cause, it was not fair to embarrass the case with private counsel, even though appointed by the Governor and paid $100 by the state. The prosecution has done defendant a grave wrong and imposed on him the burden of two expensive appeals. On each trial the testimony of the accusing witness was improbable and it was flatly contradicted by the defendant. It was word of one against the other. But on the second trial there was in store for defendant a grave surprise. Without any warning one Mrs. Manning, a person of questionable character for truth, whose name was not on the information, was called and testified that on the eventful day she went to the Day house, rapped three times at the front door, then went to the kitchen door, and to frighten

the children she pushed the door ajar and saw the show. Then she closed the door, went off, and never spoke of it to any one except her husband. Of course, her testimony fell as lightning from a clear sky. There was no means of refuting it, and it turned the scales against the defendant. But after the conviction the refutation became ample: Mrs. George Anderson met Mrs. Manning on the train and heard her story, and she asserted that "when she got to the kitchen door there was no one there, so she went to the dining room door, and there saw Stepp and Florence on the floor." Then, as she swears, this Mrs. Manning was living with her son on land rented from the Days. And that is of importance. It gives us the missing link and the motive. Thomas B. Wood, of Sarles, made affidavit that for 15 years he had known Mrs. Manning, and during that time she had changed her name several times; that her reputation for truth is bad; and that he would not believe her under oath.

Lizzie Lurton, of Sarles, made affidavit that for 15 years she had known Mrs. Manning; that her reputation was not good; and that she would not believe her under oath, and added: "I believe she would swear false for money."

A. L. Wheeler makes a similar affidavit.

William Winfield swears: "I have known Mrs. Manning 15 years, and I would not believe her under oath." Julia Welcome swears that in the summer of 1919 Mrs. Manning visited at her home in Sarles and said to her: "I don't believe Hiram Stepp is guilty, do you?" "The reputation of Mrs. Manning for truth and veracity is bad, and I would not believe her under oath."

Guy L. Welcome swears: "I reside at Sarles. I have known Mrs. Manning for 20 years"; that during the summer of 1919 she stayed at the home of himself and his wife, and she said: "I don't believe Hiram Stepp is guilty; do you?" The witness says:

"Mrs. Manning is a sister of my father, and that for two years her husband has been in Colorado, and she keeps company with other men; that her reputation for truth and veracity is bad, and I would not believe her under oath, and that she is a trouble maker and does not get along with her neighbors. And that she lives with her son, Henry Aldrich, who rents land owned by Mr. Day, the father of Florence."

With such testimony given on a third trial, the chances are that a

jury would not give much credit to the very improbable testimony of Mrs. Manning.

As I wrote on the first appeal:

"The first trial was in June, 1919. The transcript covers 274 pages, and a large part of it consists of irrelevant and prejudicial matter. The prosecution was represented by Mr. Grimson, state's attorney, Mr. Nuchols, Assistant Attorney General, and Mr. Fred Traynor, special counsel retained by the father.

"Florence Day was between 15 and 16 years. She is the eldest of six children. From the age of 7 she had gone to the village school at Sarles, yet, according to her story, she had not heard how children come into the world, and believed her good mother, who said the doctor brought them. Yet she is no simpleton. She was entirely competent to go into her father's field and to take charge of the plow and binder. Florence, as the special counsel familiarly calls her on most every page of the long transcript, was far from being malicious or a bad girl. She never told on her several lovers, never thought of blackmailing them; but, according to her own testimony, she was of rather easy virtue and entirely too familiar with her father's help and one or two young rascals. The result was she had a child and learned how children came into the world. Then, for the first time, she told Mama that defendant was the father. He was a married man of 53 years and had some property. The young rascals had nothing, and so a special counsel was employed to aid in giving defendant a special prosecution.

"There is no claim that by any word or act Miss Florence ever made the least resistance to any of her lovers. The testimony is in some respects self-impeaching. Defendant swears positively that all she says of him is wholly untrue, and that he never took any liberties with her. Thus there is a direct conflict of testimony and there is no corroboration on one side or the other. Hence, to turn the scales the special counsel must have thought it necessary to drag in a lot of prejudicial matter."

As it was on the first trial, so it was on the second, and for those reasons the judgment should be reversed and a new trial granted.