# THE STATE OF NORTH DAKOTA, Respondent, v. ARTHUR G. WEBER, Appellant.

### (191 N. W. 610.)

**Bastards — order denying new trial held erroneous where evidence tended to show and trial court intimated that verdict wrong.**

Where a new trial is demanded in a bastardy proceeding on the ground that the evidence is insufficient to sustain the verdict which declared the defendant to be the father of the child; and the trial court in denying the motion distinctly expresses the belief that the verdict is wrong; that the evidence in the case shows that there is a greater probability that a person other than the defendant (who has been referred to in the evidence) is the father of the child; and where the transcript of the evidence adduced upon the trial fully justifies the views thus expressed by the trial court, the order denying a new trial will be set aside and a new trial ordered.

Opinion filed December 21, 1922.

Bastards, 7 C. J. § 140 p. 1000 n. 42.

Appeal from the District Court of Bottineau County, *Buttz, J.*

Defendant appeals from the judgment and from an order denying his motion for a new trial.

Reversed.

*McGee & Goss,* for appellant.

*J. J. Weeks,* State's Attorney for Bottineau County, for respondent.

CHRISTIANSON, J. This is a bastardy proceeding. The jury returned a verdict declaring the defendant to be the father of the child. Judgment was entered in conformity with the verdict. Defendant moved for a new trial upon the grounds, among others, of insufficiency of the evidence to justify the verdict, and newly discovered evidence. The motion was denied and the defendant has appealed from the judgment, and from the order denying a new trial. After a careful consideration of the record transmitted to us on this appeal, we are of the opinion that the trial court erred in denying a new trial. In denying the motion for a new trial, the trial judge attached to, and filed with, the order, a memorandum opinion, wherein he stated:

*"The evidence is of so unsatisfactory a character and the results of the trial as a whole leaves my mind in such a state that if I had been a juror I could not have returned a verdict of guilty against the defendant. The defense was, to my mind, the most complete and satisfactory of any that I have ever heard in a case of this character, and the defendant's alibi was all but complete. It would seem more probable that the younger man suggested by the defendant as the girl's lover might be the father of the child rather than the defendant.* However, I am of the opinion that there are no errors of law in this case warranting the vacating of the judgment. The defendant has had two fair trials and two different and disinterested sets of jurors have found him to be the father of the child in question. I feel that the judgment of one man ought not to intervene to overthrow that of the twenty-four citizens of the community who have concluded otherwise after hearing all of the facts."

A careful examination of the evidence leads us to the conclusion that the views thus expressed by the trial court which we have italicized, are fully justified. Upon the preliminary examination held in the fall of 1917, the prosecutrix testified positively, and unequivocally,

that she had sexual intercourse with the defendant, at her home, on August 15th, and September 17th, 1917; that she never had intercourse, either with the defendant, or with any other man, at any other time. The undisputed evidence is to the effect that the physicians who examined her, at, or about, the time the prosecution was instituted, stated that she must have become pregnant at some date earlier than August 15th, but that she, nevertheless, persisted in her contention that the two dates stated were the only ones on which she had had sexual intercourse with anyone. She identified both of these dates positively; upon both occasions her parents were away and she at home alone. The prosecutrix admitted that she never deviated from this story until after the child was born. The child was born April 22, 1918. Upon the trial she claimed, however that the defendant also had had sexual intercourse with her on July 24, 1917. She identified that date as being one on which a certain "pie social" was held at Gardena, in Bottineau county. According to her testimony, the defendant took her home from this party. Her testimony to that effect is uncorroborated and is contradicted by the defendant and several witnesses, who, so far as this record discloses, are respectable and truthful men and women. The testimony of the prosecuting witness is also impeached by another witness, who testified that the prosecutrix made statements to her shortly after the party to the effect that a man, other than the defendant, took her home from such party. The only testimony, that, in any degree, tends to corroborate the testimony of the prosecutrix, is that of another girl, who testified that early in the evening she heard the defendant state to the prosecutrix that he would take her home. That witness, however, testified further that she did not remain until the party broke up, and that she did not know whether the defendant took the prosecutrix home.

The undisputed evidence also shows that the prosecutrix attended a dance, given by a neighbor, on July 9, 1917; that on this occasion she went with a man other than the defendant. The evidence shows that she and such other man spent part of the evening in a bedroom in the house alone; that their actions aroused the suspicions of many of those present, including the hostess; and three women, including the hostess, testified to the condition and appearance of the bed in the room, after the prosecutrix and her companion had left it; and for

the purpose of this opinion it is sufficient to say that the testimony so
given tends to show that there was at least good reason for the belief
apparently entertained by these women that the prosecutrix and her
escort had had sexual intercourse on the bed in that room that evening.
So far as the evidence shows, the women, who gave the testimony regard-
ing the actions of the prosecutrix and her escort and the appearance
of the bed, were disinterested and credible witnesses.

The prosecutrix testified that at the time the defendant had inter-
course with her, she did not know anything about the possible result
of the sexual act; that she did not know how children were procreated,
or to use her own words: "I didn't know what was the cause of chil-
dren, or anything at that time." Yet, when asked how she knew that
it was on the 15th of August that the defendant had intercourse with
her, she answered that she knew because she marked the date on an
almanac, and when asked on her preliminary examination why she
did this, she answered: "Why did I? I wanted to keep a record, only
because I wanted to keep a record of it." When next asked: "Well,
what did you want to do with the record?" she answered: "Wanted
to keep it when I had anything to do with anybody."

The record is quite lengthy (the transcript of the testimony contains
some 426 pages), and it is impracticable, and would extend this opinion
to a very great length, to set forth even a synopsis of the testimony of
the different witnesses. What has been set forth, is to indicate that
the record justifies the views expressed by the trial judge in his mem-
orandum opinion. One of the affidavits relating to newly discovered
evidence has a direct bearing on the incident of July 24, 1917. The
party who made the affidavit claims that the father of the complaining
witness sought to induce him to testify that he saw the defendant and
the prosecutrix on the evening of July 24, 1917, at or about the place
where she claims that the act of sexual intercourse took place. Respond-
ent invokes the well-settled rule that a motion for a new trial on the
ground of insufficiency of the evidence to sustain the verdict is addressed
to the sound judicial discretion of the trial court, and that the appellate
court will not interfere unless an abuse of such discretion is shown.
The rule is one of general application, and has been recognized by this
court in all cases where it has been called upon to review the correctness
of orders granting or denying new trials on the ground of insufficiency

of the evidence or other discretionary ground. This does not mean, however, that the trial court may refuse to exercise the judgment and discretion which the law contemplates shall be exercised by him. Neither does it mean that he is vested with arbitrary power, and may, if he desires, rule contrary to his own judgment. On the contrary the terms of the rule invoked clearly imply: (1) That the trial court in deciding a motion for a new trial on such ground must exercise judgment and discretion, and that his ultimate decision as to whether a new trial shall or shall not be had is to be controlled by his own candid, sober judgment, on the merits of the particular question; he may not refuse to exercise judgment; nor may he refuse to do that which his judgment and conscience tells him is the right thing to do. (2) That there is a clear distinction between the duty of a trial court and the duty of an appellate court as regards the determination of such questions, and that the extent of inquiry of the appellate court is much more restricted than that of the trial court.

The reason for the distinction between the respective duties of a trial court and an appellate court, as concerns such motions, is not predicated alone upon the fact that the trial court is one of original, and the appellate court one of appellate, jurisdiction. While this prescribes the appellate court from ruling on a motion for a new trial in the first instance, it does not necessarily affect or limit the extent of inquiry on appeal. This is illustrated by the fact that where the motion for a new trial is decided by a judge other than the one who tried the case, the appellate court does not feel bound by his decision in the same degree as where the motion is decided by the judge who tried the case. Braithwaite v. Aiken, 2 N. D. 57, 63, 49 N. W. 419. In other words, the primary reason for the strong presumptions of correctness which the appellate courts apply in reviewing orders of this kind is that, in the very nature of things, the trial court is better qualified to decide the question involved than the appellate court possibly can be.

Says Spelling (Spelling, New Tr. & App. Pr.):

"The discretion vested in the trial court to grant or refuse a new trial is neither an arbitrary nor a general discretion. It is based on the theory that the judge who tries a case, having the parties, their witnesses and counsel before him, with opportunity to observe their

demeanor and conduct during the trial, and to note all incidents occurring during its progress likely to affect the result thereof, is better qualified to judge whether a fair trial has been had, and substantial justice done, than the appellate tribunal." 1 Spelling, New Tr. & App. Pr. p. 405.

"While the (trial) court has this broad discretion in deciding, yet it cannot evade the duty to decide. It cannot refuse to examine the evidence to ascertain whether the verdict is contrary to the evidence, that being one of the statutory grounds for a new trial, and the mere fact that the jury are the exclusive judges of all questions of facts submitted to them does not justify the judge of the trial court in declining to examine the sufficiency of the evidence upon which the verdict rests, when it is challenged by a motion for a new trial. And whenever it is manifest that the jury have found against the clear weight of the evidence, and that the party asking for a new trial has not, in all probability, had a fair trial, nor received substantial justice, it is his imperative duty to set the verdict aside and grant a new trial." 1 Spelling, New Tr. & App. Pr. pp. 403, 404.

The same rule is laid down in Hayne's work on New Trial and Appeal. See 1 Hayne, New Tr. & App. Rev. ed. pp. 469–474.

The rule so announced is not a mere *ipse dixit* on the part of these text-writers; it is predicated upon adjudicated cases in which the decisions were written by eminent jurists.

In an opinion written by Justice Brewer (Kansas P. R. Co. v. Kunkel, 17 Kan. 145, 172, 3 Am. Neg. Cas. 412), the supreme court of Kansas said:

"The one (the trial judge) has the same opportunity as the jury for forming a just estimate of the credence to be placed in the various witnesses, and if it appears to him that the jury have found against the weight of the evidence, it is his imperative duty to set the verdict aside. We do not mean that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and where the evidence is nearly balanced or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere

doubts of its correctness. But when his judgment tells him that it is wrong, that, whether from mistake, or prejudice, or other cause, the jury have erred, and found against the fair preponderance of the evidence, then no duty is more imperative than that of setting aside the verdict, and remanding the question to another jury."

In the case of Green v. Soule, 145 Cal. 102, 78 Pac. 337, 17 Am. Neg. Rep. 8, the supreme court of California, speaking through Judge Shaw, said:

"There is a clear and obvious distinction between the duty of a trial court and the duty of an appellate court with respect to the decision of such questions, and it is well established by the decisions of this court. The trial court cannot rest upon a conflict in the evidence, but must weigh and consider the evidence for both parties, and determine for itself the just conclusion to be drawn from it. 'Where the decision is against the weight of the evidence it is the duty of that court to grant a new trial.' Irving v. Cunningham, 58 Cal. 309; Mason v. Austin, 46 Cal. 387; Hawkins v. Abbott, 40 Cal. 639; Bjorman v. Ft. Bragg Redwood Co. 92 Cal. 500, 28 Pac. 591. If the judge is not satisfied with the verdict, and is convinced that it is clearly against the weight of the evidence, it is his duty to set it aside, even though there may have been some conflict in the testimony. He has had the same opportunity as the jury to observe the manner of the witnesses, and to decide upon their credibility, and it is his duty to see that the verdict is not clearly against the weight of the evidence. He must exercise a wholesome and discreet supervision over the jury in this respect. . . . Of course, the judge should give due respect to the verdict of the jury, and may sometimes properly deny a new trial in cases where, if submitted to him without a jury, he might upon the evidence have made a different decision. He must be clearly satisfied that the verdict is wrong; otherwise, he should let it stand. But in considering the question upon the motion he must act upon his own judgment as to the effect of the evidence. The parties are entitled to the judgment of the jury in rendering a verdict, in the first instance; but upon a motion for a new trial they are equally entitled to the independent judgment of the judge as to whether such verdict is supported by the evidence."

In People v. Knutte, 111 Cal. 453, 455, 44 Pac. 166, the court said: "While it is the exclusive province of the jury to find the facts, it

is nevertheless one of the most important requirements of the trial judge to see to it that this function of the jury is intelligently and justly exercised. In this respect, while he cannot competently interfere with or control the jury in passing upon the evidence, he nevertheless exercises a very salutary supervisory power over their verdict. In the exercise of that power he should always satisfy himself that the evidence as a whole is sufficient to sustain the verdict found, and, if in his sound judgment it is not, he should unhesitatingly say so, and set the verdict aside."

In Tennessee, Coal & R. Co. v. Roddy, 85 Tenn. 400, 5 S. W. 286, Mr. Justice Lurton, speaking for the court, said:

"If he (the judge) was not satisfied that under the facts and law the plaintiff should have a verdict, it was his plain duty to set it aside and grant a new trial. The doctrine is well settled in this court, that if the circuit judge is of the opinion that a verdict is against the weight of the evidence, or is contrary to the law as charged by himself, he should grant a new trial. . . . Much of the importance and weight attached to jury trials proceeds from the presumption that an intelligent and learned circuit judge, accustomed to weighing evidence, has scrutinized the proof, looked into the faces of the witnesses, and indorsed the action of the jury. The integrity and value of jury trials will largely disappear, if the circuit judges shall endeavor to avoid the duty imposed upon them by law in this regard. If he is dissatisfied with the verdict he ought to set it aside; and this court has held that where this dissatisfaction appears in the record this court will do what he ought to have done—grant a new trial."

The rule thus announced was reaffirmed by the supreme court of Tennessee in Nashville, C. & St. L. R. Co. v. Neely, 102 Tenn. 700, 52 S. W. 167. In that case the trial court in overruling a motion for a new trial stated *"that the facts in the case were considerably mixed, but that it was a rule of his to rarely invade the province of the jury in setting aside their verdicts, if there were any substantial facts to support the same."*

In commenting on the action of the trial court, and the reasons given for such action, the supreme court of Tennessee said: "The concluding part of this recital, which we have italicized, discloses erroneous action on the part of the court. . . . The case had passed from the

jury, and had reached that stage in which the judge must approve or disapprove the verdict; and, in discharging that exclusive and independent duty, he must unavoidably determine for himself, after giving all due weight to the verdict of the jury, whether or not the evidence introduced was sufficient to sustain the verdict. Illinois C. R. Co. v. Brown, 96 Tenn. 559, 35 S. W. 560. His Honor seems to have gone far enough in his consideration of the evidence to conclude that there were some 'substantial facts to support' the verdict, and, deeming that sufficient, he considered the evidence no further. That was a misapplication of a familiar rule of long standing in the practice of this court, but wholly inapplicable in nisi prius courts. Indeed, that rule, as here applied, is based upon the fact that both the trial judge and the jury have carefully weighed the evidence, and that while doing so they have had more favorable opportunities of ascertaining the truth than this court can have."

The principles stated in these cases are in harmony with those announced by this court in State v. Stepp, 48 N. D. 566, 185 N. W. 812. In that case the defendant moved for a new trial on the ground of newly discovered evidence. The newly discovered evidence had reference to a witness who had testified at the trial. The proposed "new" evidence had a tendency to show that such witness had made certain statements inconsistent with or contradictory to the testimony she gave upon the trial. In a memorandum opinion filed with the order denying a new trial, the trial court said:

"While I am not satisfied with all the evidence in this case, there is evidence in the case which, if believed, is amply sufficient to sustain the verdict. As I understand it, the credit to be given a witness, and the weight of the evidence, is for the jury, and the court is not justified in setting aside the verdict simply because he could not have arrived at the same conclusion as did the jury."

In the certificate of probable cause the trial judge (with respect to the witness referred to in the affidavits relating to newly discovered evidence) said: "If her evidence was believed by the jury this was the strongest testimony the state had, and one of the jury men so expressed himself to me; however, for the reason stated in the order denying a new trial, a new trial was denied."

In its decision in that case this court said:

"The difficulty which confronts us in this case is one of interpreting the actual findings of the trial judge.

"It is true he denied the motion for a new trial, but according to his memorandum opinion he was not satisfied with the evidence on which the verdict was based, and apparently the controlling reason for denying the motion for a new trial was that there was sufficient evidence to sustain the verdict. In the certificate of probable cause certain language is used, which seems to imply that the trial judge believed that the conviction of the defendant was due, largely, if not wholly, to the testimony of the witness, Mrs. Manning. He was not justified in denying the motion for a new trial here merely because he was of the opinion that there was substantial evidence tending to support the verdict. If he was of the opinion that the proposed evidence was newly discovered and could not with reasonable diligence have been discovered and produced by the defendant upon the trial of the action; and if he further was of the opinion that the newly discovered evidence probably would, and ought to, bring about a different result upon another trial—in other words, if the trial judge was of the belief that the new evidence was of such character that, considered in connection with the evidence adduced upon the trial, it would be likely to create in the minds of reasonable men a reasonable doubt as to defendant's guilt—then he should have granted a new trial. Or to state the concrete proposition as it appears in this case, it is our opinion that if the trial court was of the belief that the defendant would not have been convicted except for the testimony given by Mrs. Manning, then he should have granted the motion for a new trial.

"The language utilized by the trial judge in the record transmitted to us on this appeal is such that we have some difficulty in understanding exactly what conclusions he did reach so far as the facts are concerned. And it is his judgment, his conclusions as to what the facts are which in the first instance largely, if not wholly, determine whether a new trial should or should not be had. The discretionary power with which trial courts are vested in ruling on motions for a new trial, on the ground of newly discovered evidence is primarily applicable to a determination of the facts. The facts being determined, the applicable legal principles readily determine whether a new trial should or should not be had."

In State v. Stepp, supra, the members of this court were all agreed that the order denying the motion for a new trial should be set aside; two members of the court were of the opinion that this court should order a new trial; the remaining three members, however, were of the opinion that the cause should be "remanded with directions that the trial court hear such motion anew, and, by application of the principles enunciated in the opinion determine whether a new trial should or should not be had."

The record in this case, however, presents a situation quite different from that presented in State v. Stepp, supra. In that case there was no definite expression by the trial court of his views upon the facts presented for determination by the motion. There was no specific disapproval of the verdict. In this case, however, the trial court has expressed its disapproval of the verdict in no uncertain terms. The language of the trial judge can mean only that he believed the verdict to be wrong; that after a careful consideration of the evidence in the case he was of the opinion that it was improbable that the defendant was the father of the child; that on the contrary there was greater probability that the other man referred to in the testimony is the father. In other words, in this case the trial court has in reality decided the pertinent facts presented by the motion. Hence, as was said in State v. Stepp, "the facts being determined, the applicable legal principles readily determine whether a new trial should or should not be had."

The fact that the verdict under consideration was returned upon a second trial is not of controlling importance. It appears that the first trial was had before a district judge other than the one who tried the case the second time. It also appears that the first verdict was set aside on the ground of surprise. The order setting aside the verdict was made by the judge who tried the case. He doubtless was of the belief that the defendant had not had a fair trial, and that the ends of justice required that the verdict be set aside. The correctness of the order so made has never been challenged. But even if the first verdict had been set aside on the ground of insufficiency of the evidence, it would not relieve the judge who tried the case the second time from considering and deciding the question of the sufficiency of the evidence to sustain the verdict returned upon the trial had before him. He would, of course, give due weight to the verdicts; but it would never-

theless be incumbent upon him to exercise his independent judgment
upon the questions presented by the motion; and, if after a full and
careful consideration of all the facts and circumstances he had an abid-
ing conviction that the verdict was contrary to the weight of the evi-
dence, it was his duty to ·give .effect to the conviction by setting the
verdict aside. Love v. McElroy, 118 Ill. App. 412; Mason v. Under-
wood, 48 N. D. 122, 183 N. W. 525.

We are wholly agreed that upon the record here, the order appealed
from must be reversed and a new trial ordered.

Reversed and remanded for a new trial.

BIRDZELL, Ch. J., and ROBINSON, and BRONSON, JJ., concur.

GRACE, J. (specially concurring). In denying the motion for a
new trial, the trial court rendered a memorandum opinion, wherein
he stated the language quoted on page 1 of the principal opinion. It
is unnecessary to restate the language here. It is such as shows, we
think, that the trial court was convinced that a new trial should be
granted, but, for reasons stated in his opinion, he did not do so. These
reasons appear in the majority opinion in the above-mentioned quota-
tion.

I agree with the principal opinion, that the court erred in denying
a new trial. There was certainly a very grave doubt in the trial court's
mind. Such doubts were expressed in his memorandum opinion. It
is not necessary to review them here. I think he erred in not granting
a new trial. The basis of the error is very similar to that in State v.
Stepp, 48 N. D. 566, 185 N. W. 812, where I dissented from the
majority opinion.