JOHNNIE KOHLMAN, by L. J. Kohlman, his Guardian ad Litem, Appellant, v. M. S. HYLAND, Respondent.

(219 N. W. 228.)

**Appeal and error — on appeal order granting new trial stands on firmer foundation than order denying new trial.**

1. In an appellate court orders granting new trials stand upon a firmer foundation than orders denying new trials.

**Appeal and error — new trial — court's discretion — evidence to support verdict.**

2. A motion for a new trial on the ground of the insufficiency of the evidence to support the verdict invokes the discretion of the trial court, but the discretion is a legal discretion to be exercised in the interest of justice, and, where the motion is granted, it must appear that the alleged cause or ground had an actual existence.

**Appeal and error — test whether decision is within court's discretion.**

3. The test as to whether a decision is within the discretion of a court is whether or not the question may properly be decided either way.

**New trial — evidence showing negligent driving — ordering new trial held error.**

4. In the instant case the evidence is examined and it is found to show indisputably that the conveyance in which the plaintiff was riding at the time of the collision with the defendant's automobile was being driven upon the extreme right side of the graded highway, that the defendant's car was pursuing a zigzag course, carrying it to the same side of the highway, and that the collision occurred through the failure of the driver to observe the law of the road. Since the facts from which the inference of negligent driving may be drawn do not rest upon conflicting evidence, and since the inference is one that is clearly warranted, the court, in ruling upon the motion for a new trial, was not exercising a discretionary power and it was error to grant the motion.

Opinion filed March 21, 1928. Rehearing denied May 12, 1928.

Appeal and Error, 4 C. J. § 2813 p. 832 n. 47; § 2816 p. 834 n. 65. Discretion, 18 C. J. § 3 p. 1135 n. 44. Motor Vehicles, 42 C. J. § 1164 p. 1287 n. 24. New Trial, 29 Cyc. p. 1009 n. 49, 54.

Note.—(2) Granting or refusal of motion for new trial on the ground of insufficiency of evidence within the discretion of trial court, see 2 R. C. L. 217; 1 R. C. L. Supp. 453; 4 R. C. L. Supp. 93; 5 R. C. L. Supp. 83; 6 R. C. L. Supp. 78; 7 R. C. L. Supp. 38.

Appeal from the District Court of Cass County, *Buttz,* **J.**
Reversed.

*P. M. Paulsen,* for appellant.

"This [the supreme court] court will as a general rule, only ask and determine, Is there any legal evidence or testimony which fairly warrants the verdict of the jury? If there is, particularly in a case where the evidence is conflicting, the verdict will not be disturbed; and if there is not, the verdict will be set aside." Brewing Co. v. Mielenz, 5 Dak. 136, 37 N. W. 728.

"It is now however a general rule, well established in the United States either by custom or statute, that travelers proceeding in opposite directions when meeting, shall reasonably turn to the right of the middle of the road and pass each other to the left." Segerstrom v. Lawrence, 64 Wash. 245, 116 Pac. 876; McLane v. Sharpe, 2 Harr. (Del.) 481; Dunn v. Moratz, 92 Ill. App. 477.

"And each driver may assume that the other will obey the law of the road and will drive to the right, and each has the right to act on that assumption." Vonderhorst Brewing Co. v. Armbine, 98 Md. 406, 56 Atl. 833; Angell v. Lewis, 20 R. I. 391, 39 Atl. 521; Ballard v. Collins, 63 Wash. 493, 115 Pac. 1050.

"One who drives along the left-hand side of the road after sunset, at a very fast pace, is wilfully negligent and is liable to one who is proceeding in the opposite direction on the proper side of the road." Shockley v. Shepherd, 9 Houst. (Del.) 270, 32 Atl. 173.

If the operator of an automobile drives his machine on the left or wrong side of the street, contrary to the statute and an injury results to a pedestrian therefrom, without fault on the part of the latter, the pedestrian is entitled to recover. Crier v. Samuel (Del.) 86 Atl. 209.

"One who violates the law of the road, by driving on the wrong side, assumes the risk of such an experiment and is required to use greater care than if he had kept on the right side, and if a collision takes place under such circumstances the presumption is against the party who is on the wrong side." Abgell v. Lewis, 20 R. I. 391, 39 Atl. 521.

*Francis Murphy,* for respondent.

BIRDZELL, J. This is an action to recover damages alleged to have been sustained by the plaintiff in a collision with an automobile owned

by the defendant. The case has been twice tried. After the first trial there was an appeal to this court and a new trial was awarded. Upon the second trial the plaintiff had a verdict for $2,200, upon which judgment was entered. Thereafter the trial court granted the defendant's motion for a new trial and the instant appeal is from that order. The essential facts developed upon the trial do not differ materially from those before this court upon the former appeal. The following statement, taken from the former opinion (Kohlman v. Hyland, 54 N. D. 710, 50 A.L.R. 1437, 210 N. W. 643), presents the general situation:

"The plaintiff, a boy of 13, was, on July 21, 1923, injured in a collision with an automobile belonging to the defendant. The accident occurred near the city of New Rockford, this state. The defendant is an electrical contractor, engaged in the business of building and repairing telephone lines. At the time of the accident, one Ludwig, was employed as foreman by the defendant, and, on the morning of July 21st, left Hillsboro in a runabout, en route to McKenzie county, to build some telephone lines for his employer. He was accompanied by one Sinner, also an employee of the defendant, and the defendant's son, Benny. They carried a box of tools, etc., in the car, to be used in connection with the proposed work. The defendant instructed Ludwig, before the latter left Hillsboro, to proceed to McKenzie county by way of Mayville, Finley, Cooperstown, and Carrington, and directed him to remain in Carrington over night. He followed the prescribed route as far as Finley, where he departed therefrom at the request of Sinner, and proceeded to the city of McVille, in a northwesterly direction. They remained at McVille about one hour, and then left for Carrington by way of New Rockford. The Kohlmans lived east of New Rockford, and, at the time of the accident, were driving in an easterly direction on the so-called Tiffany highway. About a mile east of New Rockford, they were struck by the car driven by Ludwig. The car was going west, towards New Rockford, en route to Carrington. As a result of the collision plaintiff was injured."

The collision occurred within about eighteen miles of their original destination of Carrington at a point more than sixty miles west of the point of original detour. While the defendant's servants, then, had deviated from the route they were instructed to take and had never returned to it, they had nevertheless almost completed the journey to the

original destination before the collision occurred. There is testimony in this record to the effect that the defendant contemplated meeting his employees at Carrington on the following morning and that it was planned to go from Carrington to Fessenden to do some work before proceeding on to McKenzie county. The law of this case with reference to deviation was established on the former appeal and needs no further consideration here.

In granting the motion for a new trial the learned trial judge in his memorandum opinion said:

"The first trial had to do very largely with the question of whether or not the servant was on his master's business at the time the accident occurred. This was the first matter and chief matter before the district court on a motion for a directed verdict. This was the matter before the supreme court on the appeal. It was the thing which was outstanding in the minds of counsel on both sides at the trial before me, and I must confess that it was the outstanding proposition in my mind at the time of trial. The result was that on the second trial everyone was thinking along those same lines and that was the particular thing stressed, and *perhaps all of us to a greater or less extent overlooked the really great question in the case, namely that of negligence, and the great fact that whether or not the servant was acting in the course of his employment made no difference provided that servant was not negligent and that his negligence did not bring about the plaintiff's injuries.* The more I think the matter over the more impressed I am with the lack of negligence in this case, and on a consideration of the whole case I conclude that the defendant has not had a fair trial and that there ought to be a further examination of this matter, particularly upon the question of negligence, and that possibly further evidence be adduced on this subject, and that there be presented more of detail the road conditions and the surrounding situation at the time of the accident and immediately before." The court had already discussed the subjects of speed, of lights and of the position in the roadway, commenting on the unsatisfactory character of the evidence to establish the negligence alleged with respect to these matters. It is necessary to consider here the state of the evidence with regard to each of the allegations of negligence, which were separately considered by the trial court, resulting in the conclusion that the evi-

dence was so unsatisfactory in this respect as to warrant the granting of a new trial.

The plaintiff made no attempt to prove the speed at which the car was traveling. All the testimony in the record on his behalf, with reference to speed, is contained in the following leading questions and answers, which were not objected to: "Q. Did you notice whether this car was going fast or otherwise? A. Yes, it was going fast. . . . Q. Well, did it look to you like it was going fast? A. Yes sir. Q. Now did you notice anything about the car, anything else about the car as it was coming toward you? A. Well, he was coming from the east you know, and he looks to me as though he was coming from one side to the other, so I tried to get my horse out of the way."

With reference to lights the evidence for the plaintiff is that the defendant had poor lights, but nevertheless the plaintiff's father, who was driving the horse, testified that he saw the automobile from a half to a quarter of a mile away as it approached.

The two chief witnesses for the defendant, the adults, Ludwig and Sinner, who were in the car (the third occupant of the car, Benny Hyland, was asleep when the collision occurred), testified that they did not see the plaintiff's rig until they ran into it and until the left buggy wheel was on the left fender of the car. There is additional evidence for the defendant to the effect that the car was equipped with lights of the same character as other cars of the same make, that they were in good condition and that those in the car could see ahead five or six rods.

Concerning the position on the highway, the plaintiff's father testified that he drove out to the right as far as he could to give the approaching car the whole road; that the wheels on the right side of the buggy were in the ditch. This is corroborated by the testimony of other witnesses as to the location of the wheel track of the left front buggy wheel. The witness Sinner, testifying for the defendant, said that the night was very dark; that they were driving about fifteen or eighteen miles an hour; that they didn't see the rig in which the plaintiff was riding at all; that his recollection was that they "were to the center of the road;" that after the accident he was the only one there (Ludwig, the driver, having sustained a broken leg). It seemed to him that there was plenty of room for the buggy to have driven by. He didn't think of the distance at that particular time. A buggy is three feet, eight inches wide. The

driver would possibly have had to put one wheel in the ditch, but there was plenty of room, the ditch wasn't deep. He saw after the accident that they "were in the center of the road." The testimony otherwise shows that the graded surface of the road was approximately twenty feet wide; that there was a shallow ditch on each side of the graded portion which formed a perpendicular wall from one to two feet high at the extreme outer edge of the ditch next to the field. After the accident both the buggy and the car were upside down in the ditch on the south side of the highway.

The evidence is in dispute as to whether or not the highway had been freshly graveled. The plaintiff's witnesses testified that the road had not been freshly graveled but that there was sufficient loose gravel on the surface to disclose the wheel tracks of the buggy shortly after the accident. Ludwig testified that the gravel was fresh; that they had passed the gravel outfit about two miles back; that he couldn't drive any place but in the tracks and they weren't very straight in the fresh gravel; that immediately upon the happening of the accident he tried to turn out in the soft gravel and the car tipped over to one side; that it was loose gravel, but he didn't know how fresh it was. Sinner testified that the road was practically all graveled. He didn't know how fresh it was, but he knew it was soft and loose; that the gravel was soft and there were ruts; that the car was swerving all the time; that there wasn't any trail; that he couldn't keep the car in any particular place, and that they tried to follow the ruts. The car went from one side of the road to the other. It would jerk and jar in the center of the road. In rebuttal one witness testified that the road had never been graveled; that it was newly graded; that he had heard the testimony of the other witnesses and they might have thought the road was graveled but it was new grading.

Orders granting new trials stand on a firmer foundation in an appellate court than orders denying them. Gull River Lumber Co. v. Osborne McMillan Elevator Co. 6 N. D. 276, 69 N. W. 691; Pengilly v. J. I. Case Threshing Mach. Co. 11 N. D. 249–255, 91 N. W. 63, 12 Am. Neg. Rep. 619; Aylmer v. Adams, 30 N. D. 514–520, 153 N. W. 419; First International Bank v. Davidson, 36 N. D. 1, 161 N. W. 281; 1 Hayne, New Tr. & App. Rev. ed. § 97; 2 Hayne, New Tr. & App. Rev. ed. §§ 288, 289, pp. 1639, 1649. A motion for a new trial

on the ground of the insufficiency of the evidence to support the verdict, nevertheless, invokes the discretion of the trial court; but this is a legal and not an arbitrary discretion. As was said by this court in an early case, referring to the statutory provision authorizing the granting of new trials on discretionary grounds (Braithwaite v. Aiken, 2 N. D. 57, 64, 49 N. W. 419) :

"This clearly indicates that the trial judge who grants a new trial must act, not arbitrarily, but upon facts showing a legal ground for a new trial."

And, to the same effect are the cases supra, as well as many others that need not be cited. Perhaps the best guide for an appellate court in determining whether or not the trial court has erred in granting or denying a motion for a new trial on a discretionary ground is that suggested in the Colorado case of Clifford v. Denver, S. P. & P. R. Co. 12 Colo. 128, 20 Pac. 333, at page 335 (partially quoted with approval in 1 Spelling, New Tr. & App. Pr. § 237) :

"Trial courts may certainly exercise a reasonable discretion in granting new trials, when discretionary grounds exist and are relied on by the applicants. It seems to us, however, that, if the rule of practice concerning judicial discretion be as broad as contended for by appellee's counsel, a statute authorizing an appeal from such an order is of little practical effect, for the exercise of judicial discretion would render it a dead letter. In order to give it reasonable effect, trial courts must be required to make correct rulings on legal propositions. Where the ground of the application is insufficiency of the evidence to support the verdict; that the verdict is against the weight of the evidence; that it is unjust and inequitable, and the like,—a reasonable degree of discretion exists to allow or deny a new trial; and, when the questions involved in the application are close, the ruling of the court should not be interfered with. On the other hand, if the ground of the motion relied on does not in fact exist, or does not constitute a legal ground for a new trial, or the necessity for the application is the result of the applicant's negligence, the motion should be denied, or the ruling held to be erroneous.

"The discretion vested in the trial court to grant or refuse a new trial is neither an arbitrary nor a general discretion. It is based on the theory that the judge who tries a case, having the parties, their wit-

nesses and counsel, before him, with opportunity to observe their demeanor and conduct during the trial, and to note all incidents occurring during its progress likely to affect the result thereof, is better qualified to judge whether a fair trial has been had, and substantial justice done, than the appellate tribunal. But the fact that the legislative assembly passed a law giving the right of appeal from such orders indicates a purpose to restrict the rulings upon the subject to the application of legal principles.

"The general rule, so often announced, that a stronger presumption obtains in favor of an order granting, than one denying, a new trial, is urged in the present case as a strong reason why the ruling should not be disturbed. This rule should also be limited to cases wherein the ground on which the new trial was granted constitutes a legal ground for such order, and the alleged causes have an actual existence."

It was said by Lord Mansfield in Rex v. Wilkes, 4 Burr. 2527, 98 Eng. Reprint, 327–334:

"But discretion when applied to a court of justice, means sound discretion guided by law. It must be governed by rule not by humor; it must not be arbitrary, vague and fanciful; but legal and regular."

2 Hayne, New Tr. & App. Rev. ed. § 289.

The discretion of the trial court should be exercised in all cases in the interest of justice and where it appears to the judge that the verdict is against the weight of the evidence it is his imperative duty to set it aside. State v. Stepp, 48 N. D. 566, 185 N. W. 812; State v. Weber, 49 N. D. 325, 191 N. W. 610; Kansas P. R. Co. v. Kunkel, 17 Kan. 145, 3 Am. Neg. Cas. 412. "We do not mean," says Justice Brewer in the Kansas case, supra, at page 172, "that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when his judgment tells him it is wrong, that whether from mistake, or prejudice, or other cause, the jury have erred, and found against the fair preponderance of the evi-

dence, then no duty is more imperative than that of setting aside the verdict, and remanding the question to another jury."

While a failure to exercise a discretion that it is within the power of the court to exercise is ground for reversal, the wrongful exercise is equally so, particularly where, as here, discretionary orders are rendered appealable by statute. Olson v. Riddle, 22 N. D. 144, 132 N. W. 655. "A test of what is within the discretion of a court has been suggested by the question, May the court properly decide the point either way? If not, then there is no discretion to exercise. If there is no latitude for the exercise of the power, it cannot be said that the power is discretionary." 2 Hayne, New Tr. & App. Rev. ed. § 289. These principles have found general recognition in this state in a long line of cases from Braithwaite v. Aiken, supra, to Martin v. Parkins, 55 N. D. 339, 213 N. W. 574. In the light of these principles we are compelled to examine the record before us to determine whether or not the trial court erred in granting the motion for a new trial.

We have considered the record in this case with extreme care. We are unable to find in it any indication whatsoever that the defendant has not had a fair trial. This is the second trial of this cause. Every witness seems to have been given ample opportunity to testify fully to his recollection of the facts and circumstances and the record apparently contains as complete and accurate a description as the witnesses may be expected to give. We can see no basis whatsoever to expect that there would be a more complete description of the situation upon another trial.

Is there any basis for considering the evidence insufficient to establish negligence? Upon the trial no importance seems to have been attached to the condition of the defendant's lights; but, if it is a matter of any consequence that the lights were poor, the testimony to that fact is somewhat corroborated by the defendant's witnesses who say that they never saw the rig in which the plaintiff was riding until it was on the fender of their car. The testimony in regard to speed likewise does not seem to be of particular importance, as there was apparently no attempt to establish that the defendant's car was traveling at an excessively high rate of speed. There is no reason to assume that the jury based its verdict upon this allegation. The only substantial dispute in the testimony going to establish negligence is found in the evidence relating to

the condition of the highway. The importance of this is that it bears upon the facility of the witnesses for the plaintiff to have observed, as they claim they did, the buggy wheel tracks in the loose gravel, upon the question of the location of the defendant's car and the rig in which the plaintiff was riding at the time he was injured, and that it accounts for the zigzag course of the car. This latter fact is established, however, by the undisputed evidence of witnesses for both parties. There is likewise in the record undisputed testimony concerning the width of the highway, and the location of the buggy to the extreme south side of the graded highway is also practically undisputed. In the light of the salient ultimate facts, which thus appear to have been fully established beyond controversy, the dispute regarding the presence or absence of fresh gravel is altogether minimized. If the road was not freshly graveled, it was at least freshly graded; but in either case the automobile was traveling in a zigzag course from side to side, dictated by the condition of the highway, and at the time of the accident the rig in which the plaintiff was driving was upon the extreme south or right-hand side of the graded highway, which necessarily locates the defendant's automobile on the wrong side of the center line, although the right side of the car might have been near the center. Sinner's testimony locates the buggy upon the extreme south side of the graded highway or partially in the ditch. Hence, any dispute concerning the presence or absence of fresh gravel can be of little more importance in this case than a dispute concerning the character of lubricating oil used in the car. There is clearly no insufficiency of the evidence on the question of negligently driving the automobile in violation of the law of the road. The evidence to establish negligence in this regard is undisputed. It cannot be said that one who drives an automobile at night with lights with which he can see only a few rods ahead and on a highway upon which he is compelled to take a zigzag course, carrying him almost to the extreme left-hand side of the road, may not reasonably be found to be negligent in colliding with one who upon meeting him has given him practically the entire road.

The statute, § 2974 of the Compiled Laws of 1913, in laying down the law of the road, makes it the duty of the driver or operator of any automobile to turn to the right in meeting vehicles, teams or persons moving or headed in the opposite direction; and § 2976 specifical-

ly provides that the driver or owner of an automobile shall be liable for damages in a civil action to any person who shall have been injured in person or property by reason of a violation of the article, which includes the section fixing the law of the road. In view of this statute, it would be stating the matter most favorably to the defendant to assert that, where the facts appear to be such as this record discloses upon undisputed evidence, the inference of negligence is for the jury. There can be no doubt whatsoever that the evidence warrants the inference that the defendant was negligent. Of course, if the record were such that any fact from which the inference of negligence is to be drawn rested upon conflicting evidence, so that in drawing an inference one way or the other the jury were first required to pass judgment on the credibility of witnesses and weigh conflicting testimony, there would be ample room, in passing upon a motion for a new trial, for the court to exercise a discretion in considering whether or not the jury had found contrary to the weight of the evidence. But in the instant case, since all the facts from which the inference of negligence is to be drawn are established by undisputed evidence, and since the inference is clearly justified, the court, in ruling upon the motion for a new trial, was not called upon to exercise any discretionary power in determining whether the verdict was contrary to the evidence. There was before the court on the motion for a new trial no question regarding the sufficiency of the evidence to establish negligence that could properly be decided either way. Therefore, the court erred in granting the motion.

There is a further contention that the verdict was excessive. The evidence tends to show that, as a result of the injury, the plaintiff has completely lost his hearing in one ear and that the sight of one of his eyes is seriously impaired and that these impairments are permanent. In view of this evidence we think there is no merit in the contention that the verdict was excessive.

The order appealed from must be reversed. It is so ordered.

NUESSLE, Ch. J., and CHRISTIANSON, and BURR, JJ., concur.

BURKE, J., dissents.