Francis X. DESCHANE, Plaintiff and Respondent.

v.

Ross E. McDONALD, Defendant and Appellant.

No. 7633.

Supreme Court of North Dakota.

Nov. 27, 1957.

Leslie R. Burgum, Atty. Gen., Frank J. Kosanda, Asst. Atty. Gen., for appellant.

Degnan, Hager, McElroy & Lamb, Grand Forks, for respondent.

BURKE, Judge.

This is an action for damages for injuries received by plaintiff when an automobile in which he was riding collided with an automobile operated by the defendant. The pleadings in the case raised issues as to whether plaintiff's injuries were proximately caused by defendant's negligence or by the negligence of the driver of the car in which plaintiff was a passenger and as to the extent and degree of plaintiff's damages. Upon the trial of the case in district court the jury returned a verdict in favor of the plaintiff. Plaintiff moved for a new trial upon the issue of damages alone or in the alternative for a new trial upon all issues. After a hearing upon this motion the trial court entered an order granting a new trial upon the issue of damages alone. The defendant has appealed from this order.

There are two main issues in the case. The first is whether a trial court has the power to grant a new trial upon the issue of damages alone in a case where the plaintiff is seeking unliquidated damages. The second is whether, if the court has the power, this was a proper case in which to exercise it.

As defined by statute, "A new trial is a reexamination of an issue of fact in the same court, after a trial and decision

by a jury or court or by a referee." Section 28–1901, NDRC 1943. The use of the indefinite article "an" to modify "issue of fact" in the above statute is significant. "An", as defined by Webster's New International Dictionary, 2d ed., means "one", "some one", or "any one". A re-examination of an issue or fact may therefore be said to be a re-examination of any one issue of fact. It follows from a literal construction of Section 28–1901, supra, that the power to grant a new trial includes the power to grant a new trial upon all or upon any one of the issues of fact which arose upon a previous trial. Such a construction is in harmony with the policy as the law as expressed elsewhere. Under the provisions of Section 28–2729, NDRC 1943, the supreme court may upon an appeal, "order a new trial of the entire cause or of some specific issue or issues." This statute authorizes new trials, upon limited issues, in district courts, upon direction of the supreme court. To say that a district court itself has the power to order such a new trial is not only a literal construction of Section 28–1901, supra, but is a reasonable corollary to the express provisions of Section 28–2729, supra. We are satisfied therefore that a trial court has in a proper case the power to grant a new trial upon any one or more of the issues raised upon a previous trial.

■ The question of whether a new trial should be granted because of inadequate damages is one which lies primarily within the sound judicial discretion of the trial court. Haser v. Pape, 78 N.D. 481, 50 N.W.2d 240; Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11. And the trial court's decision upon this question will not be disturbed except for an abuse of discretion. Haser v. Pape, supra; Johnson v. Patterson, 67 N.D. 132, 270 N.W. 97; Durick v. Winters, 70 N.D. 592, 296 N.W. 744.

■ In this case the verdict in favor of the plaintiff was in the sum of $1,508.92. The undisputed proof is that his hospital and medical bills totaled $1,423.92. Plaintiff's injuries were substantial. They included a compound fracture of the right femur, a fracture of the right radius, a fracture of a phalanx of his right little finger and a fracture of a metatarsal bone in his left foot in addition to cuts and bruises. Plaintiff was in the hospital for two months and eighteen days and after his release from the hospital was in bed for two weeks at home. Thereafter he used crutches for a month and a half and since giving up the crutches he has walked with the aid of a cane. His physician testified that as a result of his injuries and their treatment plaintiff suffered considerable pain and serious discomfort and that he will have a permanent limitation of motion in his right knee and in his right hand. Plaintiff, himself testified to special damages of $40 for clothing damage, $40 for loss of eye glasses, $5 for the purchase of a cane, $75 for the employment of help, and loss of income from his own labor of $600 to $800 a year.

Since the amount of the verdict was only $85 in excess of the undisputed medical and hospital expenses, it is apparent that the jury did not allow any damages for the cost of extra help, loss of income, for pain and suffering or for permanent disability.

As to the $75 item for extra help and as to the loss of income the evidence was unsatisfactory. Plaintiff had had a heart attack about three years before the accident. While he testified that he had earned $600 to $800 a year doing odd jobs of carpentry, paper hanging and painting, he couldn't remember any specific jobs he had done either during the year in which the accident occurred or in the previous year. Under the evidence the jury could have found that it was the heart attack which was the cause of his loss of earning ability, and which made the employment of extra help necessary.

It is apparent, however, that no award for damages for pain and suffering or for permanent disability was included in the verdict. The medical testimony is that these damages were substantial. The nature and

extent of plaintiff's injuries were such that reasonable men could not disagree with this medical testimony. Clearly, the verdict was greatly disproportionate to the proven damages sustained. Browder v. Beckman, 275 Ill.App. 193; Ashland Coca Cola Bottling Co. v. Brady, 252 Ky. 183, 66 S.W.2d 57; Annotation, 20 A.L.R.2d 276. It follows that the trial court's order granting a new trial was not an abuse of judicial discretion.

■ The final question is whether this was a proper case for the exercise of the trial court's power to grant a new trial upon the question of damages alone. The granting of such a new trial should be considered with the utmost caution. Leipert v. Honold, 39 Cal.2d 462, 247 P.2d 324, 29 A.L.R.2d 1185; Bass v. Dehner, D.C., 21 F.Supp. 567. A new trial limited to the question of damages should not be granted unless the proof of liability is clear. Toshio Hamasaki v. Flotho, Cal., 240 P.2d 298; Blacktin v. McCarthy, 231 Minn. 303, 42 N.W.2d 818. The issue of damages should be separable from the other issues in the case. 66 C.J.S. New Trial § 11, p. 97; Lundblad v. Erickson, 180 Minn. 185, 230 N.W. 473. The evidence must be such that a compromise upon the question of liability may not reasonably be inferred. Fortier v. Newman, 248 Minn. 69, 78 N.W.2d 382; Caswell v. Minar Motor Co., 240 Minn. 213, 60 N.W.2d 263. And the verdict, in so far as liability is concerned, must not be tainted with passion or prejudice. Olson v. Christiansen, 230 Minn. 198, 41 N.W.2d 248.

■ This case was consolidated with two other cases for purposes of trial. They were the cases of Alma Dufault, the owner of the car in which plaintiff was riding and of Zelia Deschane, plaintiff's wife, against the defendant Ross McDonald. The jury found a verdict of dismissal in the case of Alma Dufault, and a verdict of $7,236.22 in the case of Zelia Deschane. Since the trial judge had instructed that any negligence on the part of Levi Dufault, the husband of Alma and the driver of her car, should be imputed to her, it is apparent that the jury found negligence both on the part of the de-fendant, Ross McDonald and of Levi Dufault.

The defendant, a man 61 years old, left Fargo at 3:30 in the afternoon to drive to Drayton. By his own admission he had only had four hours intermittent sleep the previous night. Shortly after he left Fargo, he became sleepy and stopped at Harwood to take a nap. He stopped again at Hillsboro for a doughnut and a cup of coffee. Leaving Hillsboro he proceeded northward to the point where the collision with the Dufault car occurred. At the trial defendant testified that he noticed the approaching Dufault car coming toward him across the center line of the highway, that to avoid a collision he turned to the left, believing that he could pass the Dufault car on the wrong side, he then turned back to the right and the two cars collided head on in the middle of the highway. The witness, Hensrud, a member of the State Highway Patrol testified that he asked the defendant immediately after the accident, "Why would he be on the wrong side of the highway * * *?", and the defendant replied, "I might have gone to sleep again." On the day that the defendant left the hospital seven days after the accident he made a statement to a Mr. Jim Lamb. This statement was reduced to writing and was signed by the defendant. This statement is in part as follows: "When I got this side of the bridge near Harwood I stopped on the side of the road and had a nap for about ½ an hour. Then I continued on to Hillsboro where I had a cup of coffee and a bun. I don't remember too much about the trip from Hillsboro to the scene of the accident. I do remember sort of waking up and seeing this white car right ahead of me about 30 feet or so away. It was coming toward me, I was on the wrong side of the road * * *."

Defendant testified that he signed this statement and initialed each page without reading it. He did not however, testify that he did not make the statements contained therein. When asked as to specific parts of the statement, his answer was "I don't think so" or "I don't remember."

Levi Dufault testified: "Well, as far as I can remember I was going on my side of the road and I seen the other car coming and while in a block he swung right into our lane and it didn't sway or anything but just coming straight and I released the gas and the first think I knew we were together."

Alma Dufault testified: "I saw the car coming at quite a distance away, I wouldn't know how far. It was on its own side of the road. It wasn't swerving. It seemed to be driving straight and true and there was no cause to worry about it. When we were real close together it turned over abruptly into our very lane and headed straight for us."

The photographs of the cars after the accident show that when the collision took place both cars were astride the center line of the highway.

Upon the record it appears to us that this was a case in which it was proper for the trial court to exercise his discretionary power of granting a new trial on the question of damages alone. The proof of defendant's liability is clear. His partial repudiation of the statements made to the witness Hensrud and to Jim Lamb are unconvincing. The fact that he had had only four hours intermittent sleep the previous night and the fact that he had to stop twice between Fargo and the site of the accident because of drowsiness are more consistent with the truth of those statements than with his testimony at the trial. The issue of damages is entirely separable from that of liability. Plaintiff was involved in this accident only as a backseat passenger in the Dufault car. There was no evidence whatever of any contributory negligence on his part and his testimony was of little or no value upon the question of liability. There is no evidence of a compromise verdict. The verdict in the case of Zelia Deschane which was tried at the same time to the same jury, was adequate. This fact would indicate that the inadequacy of plaintiff's verdict was not caused by compromise, or passion or prejudice.

Upon the whole record we are satisfied that the order appealed from should be and it is affirmed.

GRIMSON, C. J., and JOHNSON, P. O. SATHRE and JAMES MORRIS, JJ., concur.