Mrs. Harold STRANDNESS, Plaintiff
and Respondent,

v.

MONTGOMERY WARD, a corporation,
Defendant and Appellant.

Civ. No. 8795.

Supreme Court of North Dakota.

July 27, 1972.

Hjellum, Weiss, Nerison, Jukkala & Vinje, Jamestown, for defendant and appellant.

Ottmar & Nething, Jamestown, for plaintif and respondent.

PAULSON, Judge (on reassignment).

The defendant, Montgomery Ward, a corporation engaged in a retail business in downtown Jamestown, is appealing from a judgment of the District Court of Stutsman County awarding damages to the plaintiff, Mrs. Harold Strandness, for injuries she suffered as the result of a fall on the sidewalk in front of the Montgomery Ward store on February 16, 1970. Mrs. Strandness slipped on a patch of ice as she was leaving the Montgomery Ward store and struck her head on the building as she fell. The patch of ice, estimated as being from one to three feet in diameter, was formed by water leaking from the space between the store building and a canopy which extended out over the sidewalk. The canopy, which was installed by Montgomery Ward, was equipped with rain gutters which usually discharged drainage water elsewhere than onto the sidewalk.

Montgomery Ward urges that the district court erred in finding that Montgomery Ward was negligent, that it had notice of the ice accumulation, that Mrs. Strandness was not contributorily negligent; and in awarding excessive general damages; and also challenges the sufficiency of the evidence to support these findings.

■■ The general rule is that an abutting property owner or occupant is not liable for natural accumulations of ice and snow upon the sidewalk in front of his property. This court, in Clark v. Stoudt, 73 N.D. 165, 12 N.W.2d 708 (1944), paragraph 4 of the syllabus, stated:

> "Owners and occupants of property are not liable to a pedestrian for injuries resulting from a fall caused by slipping on snow and ice which, due to natural weather conditions, accumulated on the sidewalk in front of the property . . ."

Bentson v. Berde's Food Center, 231 Minn. 451, 44 N.W.2d 481 (1950), 39 Am.Jur.2d, Highways, Streets, and Bridges § 517, p. 918; 18 A.L.R.3d 428, § 2, 432. An exception to the general rule is that the abutting property owner or occupant who constructs or maintains upon his property a canopy in such a manner as to cause an artificial discharge and accumulation of water upon the sidewalk, which, when frozen, makes the use of the sidewalk dangerous, will be held liable to one who, being rightfully upon the sidewalk, is injured in consequence of such dangerous condition. 18 A.L.R.3d §§ 2, 3, pp. 432–437; 39 Am.Jur.2d, Highways, Streets, and Bridges § 520, p. 921.

A parallel factual situation to that in the case at bar was decided in Harrison v. Poli-New England Theatres, 304 Mass. 123, 23

N.E.2d 99, 100 (1939), where the Supreme Court of Massachusetts held:

"It was a question of fact whether the defendant was negligent in maintaining an improper or defective marquee from which water escaped upon the way and froze and in suffering the ice to remain upon the sidewalk up to the time the plaintiff was injured."

In *Harrison* the marquee was equipped with rain gutters which normally discharged the melting snow onto the roof of the adjacent building and away from the sidewalk. In *Harrison*, as in the case at bar, the plaintiff slipped on ice formed from melting snow which dripped from the canopy and accumulated on the sidewalk. We agree with *Harrison* and adopt its reasoning that such a situation raises a question of fact as to the abutting store owner's negligence.

■■ The district court found as a fact that Montgomery Ward was negligent. Rule 52(a) of the North Dakota Rules of Civil Procedure provides that a finding of fact shall not be set aside by this court unless clearly erroneous. We cannot say that the finding of the district court was clearly erroneous, but to the contrary, we find ample evidence to support such finding. Montgomery Ward erected a canopy on the front of its store which made the area more inviting to shoppers and instilled a sense of security in pedestrians who were walking on the sidewalk in the area protected by the canopy. Under these conditions, Montgomery Ward owed a duty to the public to properly maintain its canopy in order to provide a sidewalk free from ice, such as would be expected when the sidewalk is protected by a canopy. Montgomery Ward breached this duty in omitting to properly caulk and maintain the canopy and, as a result, there was an accumulation of water which froze on the sidewalk and, accordingly, the finding of the district court that Montgomery Ward was negligent must be upheld.

Montgomery Ward next contends that it did not have actual notice of the ice patch and that upon becoming aware of the presence of the ice patch, it diligently remedied the situation. Mr. John McFarlane testified that between one and two o'clock on the afternoon of Mrs. Strandness' fall, as he was leaving the store, he also slipped and fell on the same accumulation of water and ice on the sidewalk in front of the Montgomery Ward store. He further testified that at that time he saw one of the clerks in the store laughing at him. He did not report his fall to the store manager.

Mr. Wendell Fristedt, the store manager, testified that he had been notified of the sidewalk's icy condition fifteen or twenty minutes prior to Mrs. Strandness' fall by a man whom Mr. Fristedt could not identify and that he, Mr. Fristedt, had told Mr. Irvin Larson, an employee of Montgomery Ward, to take care of the ice but he did not further check as to whether Mr. Larson performed this particular task. He further testified that he had probably seen the wet spot when he returned from lunch, shortly after one o'clock. Mr. Larson, who was in charge of keeping the sidewalk in front of the store clear, testified that he salted the icy spot within five minutes after Mr. Fristedt advised him of the presence of the ice. There is conflicting testimony as to whether Mr. Larson salted the icy patch before or after Mrs. Strandness' fall. Mr. Larson testified that he did not know whether he applied salt to the icy patch before or after Mrs. Strandness' accident. However, Mr. McFarlane testified that he slipped on this particular patch of wet ice after one o'clock and did not notice anyone applying salt to such patch. Mrs. Strandness testified that she slipped on the patch of wet ice and and her injuries occurred some time after two o'clock, since she had attended a funeral which began at one-thirty that afternoon.

Mrs. Duane Clement, a nurse who came to the aid of Mrs. Strandness, testified that she slipped on the same wet, icy patch and

that Mrs. Strandness' accident had happened between two and three o'clock in the afternoon. The Jamestown police station records show that a call for an ambulance was received at two-thirty that afternoon. This testimony is corroborated by Mr. Fristedt, the Montgomery Ward store manager, who testified that there was a patch of water and ice still present at the time that he responded to the call that a person had suffered injuries by slipping on the sidewalk in front of the Montgomery Ward store.

From this evidence the district court found that Montgomery Ward had notice of the dangerous condition prior to Mrs. Strandness' fall and that Montgomery Ward had such notice for a sufficient length of time prior to her fall so that by the exercise of due diligence on its part Mrs. Strandness' fall could have been prevented.

Having reviewed this evidence and given due regard to the opportunity of the trial court to judge of the credibility of the witnesses, we conclude that the district court's finding was not clearly erroneous so as to require this court to set aside the finding of fact of the district court. Rule 52(a), N.D.R.Civ.P.

Montgomery Ward also contended that Mrs. Strandness was contributorily negligent. In considering this contention, we note that Mr. McFarlane and Mrs. Clement slipped on the same wet, icy patch where Mrs. Strandness fell. Neither Mr. McFarlane nor Mrs. Clement had reason to believe that the slippery spot was icy. The fact that Mrs. Clement had seen Mrs. Strandness fall would alert Mrs. Clement to be on guard for the slippery patch when she came to Mrs. Strandness' aid, and yet Mrs. Clement was caught off guard by the water-and-ice spot. Both Mrs. Strandness and Mr. McFarlane testified that they were going to walk north when they left the Montgomery Ward store, and both of them walked on the sidewalk in the area where the water-and-ice patch was located, at the northeast corner of the store entryway. Mrs. Strandness testified that:

"All I saw was a black wet patch. I stepped right on it. That's all there was there to step onto, and that was the end of everything."

She further testified that:

" . . . it was just a black spot, a wet spot, I would term it—didn't look like ice at all."

and

". . . I thought it was just water running off the building."

These facts indicate to this court that two persons, in addition to Mrs. Strandness, acting with ordinary prudence, slipped and fell at the same spot where Mrs. Strandness fell. In view of these facts, we are of the opinion that a reasonably prudent person, exercising ordinary care, would not have anticipated that the "wet spot" which had formed on the sidewalk under the protective canopy was a dangerously icy spot. Accordingly we hold that the district court's finding that Mrs. Strandness was not contributorily negligent is not clearly erroneous. Rule 52(a), N.D.R.Civ.P.

Montgomery Ward's final contention is that the award of $5,000.00 in general damages to Mrs. Strandness was excessive. The record shows that Mrs. Strandness had a 4-inch cut on her head, which was sutured without the use of an anesthetic because of Mrs. Strandness' allergic reaction to anesthetics. There was also medical testimony of a concussion, unconsciousness, hospitalization, loss of memory, dizziness, headaches, and nausea. Dr. Even L. Kostick, who treated Mrs. Strandness for her injuries, testified with reasonable medical certainty that such symptoms would last for a period of from three to four months after suffering a concussion. Montgomery Ward did not choose to cross-examine Dr. Kostick, nor did it in any manner attempt to refute his testimony by other medical testimony. Mrs. Strandness testified that she had extreme pain in her head and neck; that she was unable to carry on the normal activities in which she

had engaged prior to the accident, such as caring for her mother-in-law, operating her small printing business, participating in athletic activities, performing normal household chores for a family of seven, and taking part in church and social activities. She also testified that she had been hospitalized for six days after the accident; that she continued to experience dizziness, headaches, and nausea, up to the month of June of 1971, and as a result was unable to participate in the activities and perform the duties herein mentioned. She further testified that at the time of the trial she had not regained her former state of health and was still unable to carry on her former activities, and that her activities were much more limited than prior to the accident. The defendant did not attempt to cross-examine Mrs. Strandness or refute any of her testimony concerning her injuries.

■ An award of damages will not be disturbed on appeal unless the award is so excessive or so inadequate as to be without support in the evidence. Fowler v. Delzer, 177 N.W.2d 756 (N.D.1970); Froemke v. Hauff, 147 N.W.2d 390 (N.D.1966); and Kuntz v. Stelmachuk, 136 N.W.2d 810 (N.D. 1965).

■ A further perusal of the medical evidence presented, which was unrefuted, as well as the testimony adduced by Mrs. Strandness, reveals that Mrs. Strandness suffered temporary partial disability for a period of at least sixteen months. We are of the opinion that there would be very little value in restating the medical evidence in this opinion or in restating the testimony of Mrs. Strandness concerning her disabilities, which testimony was also unrefuted. Since we have upheld the findings of fact of the trial court and given due regard to the opportunity of the trial court to judge of the credibility of the witnesses, we conclude that the award of $5,000.00 for general damages is sufficiently supported by the evidence.

The judgment is affirmed.

STRUTZ, C. J., and ERICKSTAD, TEIGEN and KNUDSON, JJ., concur.