Susan COOK, Plaintiff and Appellant,

v.

Clyde STENSLIE, Defendant
and Appellee.

Civ. No. 9245.

Supreme Court of North Dakota.

Feb. 24, 1977.

Lanier, Knox & Olson, Fargo, for appellant; argued by Frank T. Knox, Fargo.

Vogel, Vogel, Brantner & Kelly, Fargo, for appellee; argued by Kermit Edward Bye, Fargo.

SAND, Justice.

Plaintiff Susan Cook was injured in an automobile-pedestrian accident. After a verdict for Cook in the amount of $50,000 rendered by a jury in Cass County district court, defendant-driver Clyde Stenslie moved for judgment notwithstanding the verdict or in the alternative for a new trial. The motion for judgment notwithstanding the verdict was denied, but the motion for a new trial was granted on grounds that the verdict was excessive, unsupported by the evidence, and influenced by passion and prejudice.

Susan Cook was walking across Main Avenue in Fargo on her way to work when the collision occurred. She was crossing in the crosswalk with the "walk" light in her favor. Clyde Stenslie was stopped on Eighth Street, facing south, at the intersection of Main Avenue preparing to turn left onto Main Avenue when the light turned green.

As he made the turn he was facing into the sun, which made it difficult for him to see. Cook saw Stenslie's car approach her as she crossed, at which time she quickened her walking pace but did not run. She was almost to the center of the intersection when she was struck by the front end of Stenslie's car. Stenslie did not see her until she rolled over the front of his car. Stenslie stopped, and within a few moments Cook was taken by ambulance to the hospital.

Cook suffered a fractured sacrum, along with some bruising and soreness on the outer part of her left hip where she was hit. She was hospitalized for six days to allow for observation of any numbness or loss of neurological function due to the fracture. A slight numbness on one inside thigh was found immediately after the accident but disappeared shortly thereafter, and no neurological deficit was observed. Treatment in the hospital consisted primarily of bed rest and warm baths to relieve pain and discomfort.

After discharge from the hospital, Cook stayed with her parents for a week before returning to her job as a secretary, first for half days for a period of about two to three weeks, then full time. She made visits to her doctor from the time of the accident in March 1973, until December of 1973, when X-rays showed the fracture to be healed.

After the jury returned a verdict in the amount of $50,000 in the action commenced by Cook against Stenslie for negligence, the trial court granted Stenslie's motion for new trial as to both liability and damages.

Stenslie in his motion for a new trial contended that the verdict was influenced by passion and prejudice as indicated by excessive damages in the amount of $50,000; that the verdict was reached in less than one hour and three minutes of deliberation; that special damages were only $703.10; that Cook claimed no loss of wages or impairment of future earnings; that she had not seen a doctor for the injuries suffered in the accident for two years before the trial; that she sustained only a ten percent permanent disability of the sacrum which did not affect her range of motion;

that no neurological deficit was observed; and that Cook was in two auto accidents subsequent to the collision with Stenslie.

Cook argues in this appeal that granting of a new trial was an abuse of the trial court's discretion.

We begin with the undisputed premise that a motion for new trial made under Rule 59(b), North Dakota Rules of Civil Procedure, is addressed to the sound discretion of the trial court, and the trial court's action in granting such a motion will not be disturbed on appeal unless a manifest abuse of discretion is shown. *Skjonsby v. Ness,* 221 N.W.2d 70 (N.D.1974); *Long v. People's Department Store,* 95 N.W.2d 904 (N.D.1959); 22 Am.Jur.2d *Damages* § 366.

When the motion is based upon insufficient evidence to support the verdict, the trial court is vested with a margin of discretion to weigh the evidence, not as a "thirteenth" juror but as the presiding judge, and, within certain limitations to act upon its own judgment regarding the weight and credibility of the evidence. *Wrangham v. Tebelius,* 231 N.W.2d 753 (N.D.1975).

When the motion is made on grounds of passion or prejudice, this court has held that the motion implies a *duty* on the part of the trial court to consider and weigh the evidence. *Lake v. Neubauer,* 87 N.W.2d 888 (N.D.1958); *Loveland v. Nieters,* 79 N.D. 1, 54 N.W.2d 533 (1952).

The power of the trial court to exercise its discretion on this motion must be clearly distinguished from our power on appeal, which is limited to a determination of whether grant of the motion was an abuse of discretion.

In *Maier v. Holzer,* 123 N.W.2d 29 (N.D.1963), Justice Morris in discussing motions for new trial quoted approvingly from an Ohio decision as follows:

". . . A court may not set aside a verdict upon the weight of the evidence upon a mere difference of opinion between the court and jury. . . . But, where a court finds a judgment on a

verdict manifestly against the weight of the evidence, it is its duty to set it aside. ". . . in order to reverse the action of a court granting a new trial upon the weight of the evidence, it is necessary to show an abuse of discretion upon its part, and we have held that the meaning of the term, 'abuse of discretion,' in relation to the sustaining of a motion for a new trial implies an unreasonable, arbitrary or unconscionable attitude upon the part of the court."

In determining whether or not the trial court abused its discretion in granting a new trial, we refer to the standards previously enunciated by this court in *Kohlman v. Hyland,* 56 N.D. 772, 219 N.W. 228 (1928), where the court stated:

"The discretion of the trial court should be exercised in all cases in the interest of justice, and, where it appears to the judge that the verdict is against the weight of the evidence, it is his imperative duty to set it aside. *State v. Stepp,* 48 N.D. 566, 185 N.W. 812; *State v. Weber,* 49 N.D. 325, 191 N.W. 610; *Kansas P. Ry. Co. v. Kunkel,* 17 Kan. 145. 'We do not mean,' says Justice Brewer in the Kansas case, supra, at page 172, 'that he is to substitute his own judgment in all cases for the judgment of the jury, for it is their province to settle questions of fact; and, when the evidence is nearly balanced, or is such that different minds would naturally and fairly come to different conclusions thereon, he has no right to disturb the findings of the jury, although his own judgment might incline him the other way. In other words, the finding of the jury is to be upheld by him as against any mere doubts of its correctness. But when his judgment tells him that it is wrong, that, whether from mistake, or prejudice, or other cause, the jury have erred, and found against the fair preponderance of the evidence, then no duty is more imperative than that of

setting aside the verdict, and remanding the question to another jury.' " [1] See also, 58 Am.Jur.2d *New Trial* § 137, page 342; 66 C.J.S. *New Trial* § 71, page 227; and Rule 59(b)(5) and (6), North Dakota Rules of Civil Procedure.

■ Where the motion is based upon an excessive verdict influenced by passion or prejudice, the standard for what constitutes an excessive verdict varies but generally includes one or more of the following: the amount is so unreasonable and extreme as to indicate passion or prejudice on the part of the jury, *Eriksen v. Boyer,* 225 N.W.2d 66 (N.D.1974); the award is so excessive as to be without support in the evidence, *Anderson v. Miller's Fairway Foods,* 225 N.W.2d 579 (N.D.1975); and *Strandness v. Montgomery Ward,* 199 N.W.2d 690, 694 (N.D.1972); the jury verdict is so excessive as to appear clearly arbitrary, unjust, or such as to shock the judicial conscience, *Skjonsby v. Ness,* 221 N.W.2d 70 (N.D.1974), 22 Am.Jur.2d *Damages* § 366. If the trial court, based on all the evidence and proceedings before it, found any of these, it did not abuse its discretion in granting a new trial.

■ In addition, this court has repeatedly held that a stronger showing is required to reverse the granting of a new trial than to reverse an order denying a motion for new trial. *Wrangham v. Tebelius, supra; Johnson v. Frelich,* 165 N.W.2d 343 (N.D.1969). In *Wagoner v. Bodal,* 37 N.D. 594, 164 N.W. 147, 149 (1917), we said:

"As a new trial merely affords the parties an opportunity to submit the questions to another jury, it is rarely indeed that an appellate court is justified in preventing such new trial."

Accordingly, we require a strong showing by the appellant, on whom the burden rests, to demonstrate that manifest abuse of discretion existed on the part of the trial judge in granting the motion for a new trial. We do not think that requirement

---

1. The *Kohlman* case in which this statement is found has been cited and relied upon by this court in numerous later decisions with some language modification leaving an ambiguous impression as to the applicable standards for granting new trials on the insufficiency of the evidence.

has been met here as to the issue of damages.

In examining the $50,000 verdict awarded to Cook in this case, we realize that, as in any personal injury case where excessive damages are alleged, no precise limit can be placed on the amount of damages recoverable. Human pain and suffering cannot be measured by a fixed formula, and are best left to the judgment and sound discretion of the jury. In appraising such verdicts, courts must be guided by the peculiar circumstances of each case. *Kresel v. Giese,* 231 N.W.2d 780 (N.D.1975); *Clark v. Josephson,* 66 N.W.2d 539 (N.D.1954); 25A C.J.S. *Damages* § 196.

Although basically within the province of the jury, the amount of the verdict is not insulated from supervision of the court; were it otherwise, there would be no such thing as an appeal from a judgment entered on a jury's verdict. See, *Sucher v. Oliver-Mercer Electric,* 151 N.W.2d 321 (N.D.1967). The jury's award must remain within reasonable limits in that it must be fair and reasonable, free from sentimental and fanciful standards, and based upon the facts disclosed. *Nitschke v. Barnick,* 226 N.W.2d 785 (N.D.1975). This court stated in *Leonard v. North Dakota Co-op. Wool Market Ass'n,* 72 N.D. 310, 6 N.W.2d 576 (1942):

"Pain and suffering may be considered by a jury as one of the elements of damages but sympathy may not be made the basis for rendering or upholding an otherwise excessive verdict. The purpose of an award of damages is to compensate for an injury."

Within the factual context of this case, we may consider the plaintiff's age, life expectancy, condition in life, nature and extent of injuries, loss of earnings and impairment of earning capacity, expenses incurred, pain and suffering both past and future, economic conditions, and the present purchasing power of money. 25A C.J.S. *Damages* § 197; 22 Am.Jur.2d *Damages* § 367.

Susan Cook was 23 years old and single at the time of trial, with a life expectancy of approximately 47 years. She was a secretary earning $3.00 per hour. She missed slightly in excess of two weeks of work after the accident but was paid for her absence by using up vacation and sick leave. We are not suggesting that such loss is not a proper item of damages, but loss of earning for this period was not submitted as an element of special damages. She was able to return to work full time, resuming not only her former duties, but added responsibilities as well. She received all expected raises and one additional raise which she requested. Soreness and stiffness from the injury, however, forced her to change physical positions and vary her tasks frequently while at work.

The fractured sacrum suffered in the accident healed completely. A ten percent permanent disability of the sacrum resulted from the scar tissue that formed where the fracture healed. The fracture did not affect Cook's range of motion, nor did it cause any neurological impairment. The scar tissue, however, induces pain or discomfort during certain physical activities. Cook becomes stiff and uncomfortable after sitting for over two hours or standing for long periods, after driving long distances, and during strenuous physical activities. She cannot bowl as easily as before the accident and tires after two games. She rejoined a bowling league five weeks before trial, but her bowling causes stiffness the next day. Dancing causes her to tire quickly, whereas she could dance for an entire evening before she was injured. She has a boyfriend now and dances more than before the accident.

Cook also experienced pain over the left greater trochanter (the outer part of the left hip) after the accident. The impact caused hemilyzing of the fat tissue which resulted in a permanent indentation in her hip. She sustained no permanent disability from this cosmetic deformity but the area is painful when bumped.

Cook has suffered headaches since the time of the accident, and takes aspirin as needed for headache pain and pain in the

sacral area. She also takes Darvon for pain in the sacral area. Medical costs, including doctor, hospital, ambulance, and X-rays, amounted to $703.10, and in addition $15 to $20 was expended for prescription drugs.

Evidence was also presented to the trial court that Cook was involved in two other automobile mishaps between the accident in question and the time of trial. In July of 1974 while driving alone, she rolled her car and was thrown out of it. The car was "totalled," but she testified that the roll-over caused only some bruises on her hip and leg and she did not see a doctor after the accident. The next summer, in August of 1975, her car was struck in the rear by another car. The collision caused a neck injury, for which Cook was treated by a chiropractor from August until December of 1975, just one week before trial. The chiropractor testified that Cook complained of headaches, and that headaches were a common accompanying symptom of the type of injury she received in the rear-end collision. It was his opinion that the headaches were at least aggravated by this most recent accident.

This court has not expressly held, as some courts have, that reference to or comparison to verdict sizes in other cases is not permitted when determining whether a verdict is excessive. In fact, in *Holten v. Amsden,* 161 N.W.2d 478 (N.D.1968), we did just that by examining the amounts awarded in several other cases before concluding that the verdict was not so excessive as to indicate passion or prejudice. As a practical matter, we are certain that such comparison tacitly takes place, for how else could a verdict "shock the judicial conscience" except in relation to the court's own experience with verdicts in other similar cases? The courts do not operate in a vacuum. Such comparisons, however, are never conclusive. We adhere firmly to the view that each case must be evaluated on its own particular facts and circumstances.

 Several factors in the instant case are of special importance in leading us to conclude that the trial court did not abuse its discretion in finding the damages exces-

sive. First, the amount of special damages was very small, amounting to about $725 including prescription drugs. In *Eriksen v. Boyer,* 225 N.W.2d 66 (N.D.1974), we examined briefly the issue of special damages in upholding the trial court's denial of a motion for new trial. The jury verdict in that case for $53,000 included almost $13,000 of special damages. We said:

"We do not mean to imply that there is any necessary connection between the amount of special damages and the amount of recovery allowable, but only that the amount of special damages reduces the amount of the award attributable to pain and suffering, disability, future loss of income, and medical expenses, if any."

The special damages in the instant case made up only a small fraction of the total verdict. Moreover, no loss of future earnings was shown. In *Carpenter v. Village of Dickey,* 26 N.D. 176, 143 N.W. 964 (1913), this court, in ordering a new trial because of excessive damages, commented that no loss of earning power was demonstrated and that such loss is usually an important element of damages in personal injury actions. If we consider together the factors of small special damages and no loss of earning capacity, it appears that almost all of the $50,000 verdict was awarded for pain and suffering and the ten percent disability of the sacrum, for a young woman who continues to live and work much as she had before the accident. In spite of the fact that increasingly large verdicts are being sustained, we find no support in the record for such an award, and agree with the trial court that the verdict was so excessive as to indicate passion and prejudice on the part of the jury.

In its memorandum opinion, the trial court reviewed in detail the evidence and the circumstances in the record which led it to conclude that a new trial was warranted.

The trial court, after having done so, in its memorandum opinion stated:

"It is the opinion of the court that after making all due allowances, the verdict of the jury herein is such as to give

validity to the defendant's motion for a new trial. The verdict of $50,000 is so excessive as to indicate that the jury was influenced by passion and prejudice as defined by law. The extent of her injuries and disabilities as revealed by the record, does not justify such an award of damages. . . .

". . . since it appears to the court that the verdict herein is against the weight of the evidence and that it is in the interest of justice, and that said verdict was rendered under the influence of passion and prejudice as defined by law, the motion of the defendant for new trial is hereby granted with costs as provided by law."

In reviewing evidence and circumstances set out in the record and the memorandum decision which reflects the thoughts of the trial judge, and in applying the standards set out in *Kohlman, supra,* we do not find that the trial court acted in an unreasonable, arbitrary, or unconscionable attitude nor do we find that the court abused its discretion in granting the motion for a new trial on the issue of damages.

We note also that the trial court observed and heard all witnesses, and thus occupied a position of advantage not available to us.

■ However, the order of the trial court granted a new trial on both liability and damages. The rule on this case, as stated in *Deschane v. McDonald,* 86 N.W.2d 518 (N.D.1957), is that a new trial limited to the question of damages should not be granted unless proof of liability is clear, and the evidence must be such that a compromise upon the question of liability may not reasonably be inferred. The verdict so far as liability is concerned must not be tainted with passion or prejudice.

The trial judge concluded in his memorandum opinion that the verdict as to liability was tainted with passion and prejudice and he ordered a new trial on that issue to prevent injustice. The trial court, however, did not point out any reasons for concluding that the verdict on liability was rendered under influence of passion and prejudice.

■ Our review of the record shows that there was not only ample evidence to support a finding of liability on the part of the defendant, but that proof of liability was convincing. The testimony of Cook that she was hit while in the crosswalk with the green "walk" light in her favor was undisputed. The trial court took judicial notice of several city traffic ordinances and no objection was made. The pertinent ordinance basically provides that where traffic is regulated by a traffic signal no vehicle shall enter the crosswalk until a pedestrian who has properly commenced to cross the street has completed passage, and any vehicle permitted to turn either right or left shall yield the right of way to all pedestrians who are proceeding in crosswalks.

We therefore conclude that the trial court abused its discretion in granting new trial on the issue of liability.

As this court stated in *Regent Cooperative Equity Exchange v. Johnston's Fuel Liners, Inc.,* 130 N.W.2d 165 (N.D.1964), the trial court is not required to grant a new trial on all issues. The order of the trial court is reversed in part and affirmed in part.

The order of the trial court granting a new trial on damages only is affirmed. No costs allowed to either party.

ERICKSTAD, C. J., and PAULSON and PEDERSON, JJ., concur.

VOGEL, Justice, dissenting.

I dissent. I believe the jury verdict was within the range permissible, and that the trial judge's discretion was abused when he granted the motion for a new trial.

The verdict does not appear to me to be arbitrary or unjust, shocking to the judicial conscience, or so extreme as to be without support in the evidence.

The plaintiff's partial disability will be permanent during a 47-year life expectancy. She has suffered pain in the past and will suffer intermittent pain in the future, pain which a jury can evaluate at least as well as judges can. She will live hereafter deprived of some of the pleasures which go

to make life worth living. If her pleasure in dancing and bowling is diminished, as the evidence indicates it is, she has lost some of the pleasures of life which go to make life worth living. Such pleasures add nothing to one's income, but losing them deprives one of something which money will not buy. Juries should be allowed to make an award compensating in dollars, as best they can, for the loss of pleasures as well as income.

I believe this verdict is no different, so far as grounds for finding passion and prejudice are concerned, from those cited by the majority on this question: *Eriksen v. Boyer,* 225 N.W.2d 66 (N.D.1974); *Anderson v. Miller's Fairway Foods,* 225 N.W.2d 579 (N.D.1975); *Strandness v. Montgomery Ward,* 199 N.W.2d 690 (N.D.1972); *Skjonsby v. Ness,* 221 N.W.2d 70 (N.D.1974). To this list might be added *Schan v. Howard Sober, Inc.,* 216 N.W.2d 793 (N.D.1974).

In all of the five cases just cited we affirmed the verdict or the judgment of the trial court trying the case without a jury.

The only recent case in which we have made a reduction in a verdict was in a contract action, *Vallejo v. Jamestown College,* 244 N.W.2d 753 (N.D.1976), a three-to-two decision.

I have no quarrel with the majority's statement of the holdings of our past cases, or the rules which we should apply. I simply would apply those rules in this case to sustain the jury's discretion, and hold that the judge's discretion was abused. The majority, in effect, holds that the jury's discretion was abused, and the trial judge's was not. Believing as I do, that juries can best decide questions of damages and that their verdicts should rarely be upset—and most rarely in tort cases involving future damages—I would reverse the order granting the new trial and reinstate the verdict.